## THE LUIGI.

(District Court, E. D. Pennsylvania. February 22, 1916.)

### No. 5.

INTERNATIONAL LAW ☞10—INTERNATIONAL COMITY—ATTACHMENT OF FOREIGN VESSEL REQUISITIONED FOR GOVERNMENT SERVICE.

While, under the rule of international comity, a court will not exercise jurisdiction, at suit of an individual, over a vessel which is employed in the public business of a foreign nation, where after the attachment in such a suit of a privately owned foreign vessel, which had been requisitioned for service by its home government, the owners appear, and have given bond for its release, the further action of the court can no longer affect the rights of the foreign government, but private rights only, and comity does not require it to discharge the attachment.

[Ed. Note.—For other cases, see International Law, Cent. Dig. §§ 10, 11; Dec. Dig. ☞10.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Suit by the Barnes-Ames Company against the steamship Luigi and John Dufour and James Dufour, doing business as Figli di Luigi Dufour. On suggestion that writ of attachment be quashed. Denied.

H. Alan Dawson, of Philadelphia, Pa., and Haight, Sandford & Smith, of New York City, for libelant.

Francis Fisher Kane, U. S. Atty., of Philadelphia, Pa., for United States.

Francis Rawle and Joseph W. Henderson, both of Philadelphia, Pa., for Italian Embassy.

THOMPSON, District Judge. On October 26, 1915, Messrs. Figli di Luigi Dufour, of Genoa, Italy, as owners of the Italian steamship Luigi, entered into a charter party with the Barnes-Ames Company of Duluth Minn., for charter of the Luigi to carry wheat from New York, Philadelphia, Baltimore, and Newport News to Italy or Sicily. On January 29, 1916, the charterers filed a libel for breach of charter party against the Luigi and against John Dufour and James Dufour, doing business as Figli di Luigi Dufour, of Genoa, Italy, praying process in rem and in personam. On the same day process was allowed and bond fixed at $125,000, available in either the action in rem or in personam or both.

An attachment having issued and the Luigi having been attached by the marshal, the amount of the bond, on petition of the libelants, was reduced to $60,000. While the Luigi was in the custody of the marshal, Francis Rawle, Esq., appeared in open court as amicus curiæ and orally suggested to the court that, at the time the attachment was issued, the Luigi was under requisition by the Italian government and had proceeded to and was in the port of Philadelphia for the purpose of receiving and carrying a cargo of grain for the Italian government. Mr. Rawle called the attention of the court to an order of requisition from the royal consul general of Italy at Marseilles, dated December 24, 1915, to the captain of the Luigi, informing him that the steamship was requisitioned and at the disposition of the state, dating from the 23d of December, 1915, ordering the steamer to proceed to New York for a cargo of grain for the account of the Royal Ministry of Agriculture, Industry, and Commerce. Mr. Rawle, as amicus curiæ, suggested the release of the Luigi as a public vessel in the service of the government of Italy.

The court was of the opinion that, inasmuch as the suggestion raised a question of international comity, it should come through official channels of the United States government. Thereafter, on February 15th, the master of the Luigi filed a claim intervening for the interest of Figli di Luigi Dufour, as owners, averring that he was in possession of the Luigi at the time of the attachment, that the persons above named are the true and bona fide owners of the steamship, and praying as master and bailee for the owners to be admitted to defend. Upon the same day bond was entered by the master, with surety, in the sum of $60,000, with the usual condition that the claimant and the owners fulfill and perform the judgment or decree which may be rendered in

the premises, and pay the costs and charges, and providing that the bond should be available in the action in rem or in personam or both. On the same day the marshal made return that he had restored the steamship Luigi, and the master indorsed upon the return a receipt for the vessel.

It now appears by the suggestion of the United States attorney, at the instance of the Attorney General, and by the affidavits of the royal Italian consul and the master of the Luigi, that, when the Luigi arrived at the port of Philadelphia she was and now is under requisition by the Italian government, and is now engaged in the business of that government for the carriage of a cargo of grain from Philadelphia to Italy for public use; that she is under the orders, direction, and control of the Italian government, through its consul and through her master under the order of requisition, and that she is now loaded with grain of the Italian government and is ready to sail. The above facts are brought to the attention of the court at the suggestion of the district attorney in accordance with the established practice. The Exchange, 7 Cranch, 116, 3 L. Ed. 287; The Parlement Belge, L. R., 5 P. D. 197; The Constitution, L. R., 4 P. D. 39. The ship has been by the usual means declared by the Italian government to be in its possession and to be a public vessel of the state for its use in carrying grain.

As was stated in the case of The Parlement Belge:

"It seems very difficult to say that any court can inquire by contentious testimony whether that declaration is or is not correct. To submit to such an inquiry before the court is to submit to its jurisdiction. It has been held that, if the ship be declared by the sovereign authority by the usual means to be a ship of war, that declaration cannot be inquired into. That was expressly decided under very trying circumstances in The Exchange. Whether the ship is a public ship, used for national purposes, seems to come within the same rule."

In the case of The Parlement Belge, the court laid down the following as the correct exposition of the law of nations, viz.: That as a consequence of the absolute independence of every sovereign authority, and of the international comity which induces every sovereign state to respect the independence and dignity of every other sovereign state, each and every one declines to exercise by means of any of its courts any of its territorial jurisdiction over the person of any sovereign or ambassador of any other state, or over the public property of any state which is destined to public use, or over the property of any ambassador, though such sovereign, ambassador, or property be within its territory, and therefore, but for the common agreement, subject to its jurisdiction.

It is stated in Hall's Treatise on International Law (5th Ed.) p. 161, that:

"Public vessels of the state consist in ships of war, in government ships not armed as vessels of war, such as royal or admiralty yachts, transports, or storeships, and in vessels temporarily employed, whether as transports or otherwise, provided that they are used for public purposes only, that they are commanded by an officer holding such a commission as will suffice to render the ship a public vessel by the law of his state, and that they satisfy other conditions which may be required by that law."

And at page 200:

"Besides public vessels, property of the state properly so called, vessels employed in the public service * * * are exempted from the operation of the local sovereign to the extent, but to the extent only, that is required for the service of the state owning such vessel or property."

Following a discussion of the manner of proof of the public character of the vessel, Mr. Hall, citing The Parlement Belge, says:

"A fortiori, attestation made by the government itself is a bar to all further inquiry."

It is far more important for the courts of the United States to recognize the international rule of comity that an independent sovereign cannot be personally sued, because such a suit would be inconsistent with the independence and equality among the nations of the state which he represents, than it is to take cognizance of private rights, if, by so doing, that rule is violated. If, therefore, by means of the attachment against the Luigi now under requisition as a public vessel of the Italian government, the authority of the court is indirectly exercised or attempted to be exercised upon the Italian government, so as to be inconsistent with the independence and equality of that government, the writ of attachment must be quashed.

The question to be determined, then, is whether, under the present circumstances, the authority of the court is so exercised as to be construed an attempt indirectly to bring within its authority the Italian government. The libel is against the res and the owners of the Luigi. Prior to the hearing upon the suggestion, the owners, through the master of the Luigi, had intervened, entered bond, the vessel had been released, and, at the time of the hearing, the loading had been practically completed and the vessel ready to sail. It appears, therefore, that prior to the formal suggestion the owners had stepped in, asserted their ownership, and had accomplished for the vessel, and incidentally for the Italian government, all that could have been accomplished through the court refusing to allow the attachment to stand. It was conceded at bar that, prior to the entry of bond and the release by the marshal, no berth could have been obtained for the Luigi, and that she had received her cargo as expeditiously as though she had never been attached. The custody of the court, through the marshal, over the vessel, ceased at the moment of her release, and all that remains is the bond which has been substituted for the vessel.

As the case now stands, therefore, the court possesses authority only over the obligors' bond, and none over the vessel. Nothing remains, therefore, through which, directly or indirectly, the court can exercise or attempt to exercise any authority to implead the Italian government in this suit. After the release of the Luigi, she was as to this suit as completely freed of any authority of this court as though she were upon her voyage across the Atlantic, or lying at her dock in an Italian port.

It was urged by Mr. Rawle at the hearing that the court should take cognizance of the matter in the same manner as though these facts had come to its knowledge at the time the order for process was issued.

The reasons which existed at that time for the application of the rule of comity, which would have moved the court to refuse the order for an attachment because of the universal consent to immunity of a sovereign state to being impleaded in a cause, no longer exists; and the suit from now on is between private individuals. I am unable to reach the conclusion that the rule of comity, notwithstanding its vast importance and unanimous recognition by the courts, should have retroactive effect and be applied where the necessity for its application no longer exists.

The attachment and bond will therefore be allowed to stand.