BERTHA HERNANDEZ, as Executrix, etc., of JOSEPH E. HERNANDEZ, Deceased, and WILLIAM C. ROBINSON, Respondents, v. BROOKDALE MILLS, INC., Appellant.

First Department, May 19, 1922.

Sales — action against agent of seller for breach — trial — sole question whether defendant acted for disclosed principal in negotiating contracts — instructions introducing extraneous elements erroneous — two contracts should not have been treated as separate and distinct — witnesses — confidential document wrongfully obtained by defendant admissible to contradict witness for plaintiff — document previously presented to defendants' attorney in another litigation not privileged — damages — c. i. f. contract — measure of damages is difference between market price at point of shipment and contract price at time of breach plus freight and insurance — verdict against weight of evidence.

In an action by a buyer against the agent of the seller to recover for a breach of two contracts of sale which were signed at the same time, and contained the same provisions as to time of shipment and terms, except that as to one contract the name of the principal was not stated, it was error for the trial court to instruct the jury that as to the contract in which the principal's name appeared there was an ambiguity justifying the admission of parol evidence to show whether it was the intention of the parties that that contract was the contract of the principal and to be performed by it, or whether the defendant was acting for itself as principal, and to further instruct the jury as to the second contract that there was no such ambiguity, and the only question open was whether or not the representative of the defendant was acting within the

apparent scope of his employment in signing the defendant's name, for the sole question to be determined was whether the defendant was acting as agent for a disclosed principal.

The two contracts should not have been treated as separate and distinct, inasmuch as they were signed at the same time. If the buyer knew in making the contract in which the principal's name was stated that the defendant was acting as agent for a disclosed principal, there was nothing to show that it was acting in a different capacity when it signed the second contract.

It was not error to admit in evidence on cross-examination for the purpose of contradicting a witness of the plaintiff, a document which the witness had executed and which he claimed was a privileged communication between himself and his attorney, though the possession of the document by the defendants' attorney was wrongful, for when documents are in court and pertinent to the issues, although they may have been wrongfully obtained, they are admissible in evidence and the court will not try the collateral issue to determine how they were obtained.

Moreover, it appears that the document in question was sent to the attorney for the defendant in negotiations in the settlement of other litigations between the witness and the defendant, and, therefore, there was no element of confidence such as is required to render a communication a privileged one.

The measure of damages for the breach of a c. i. f. contract by the seller is the difference between the market price at the point of shipment and the contract price at the time of the breach plus the cost of insurance and freight.

The verdict in favor of the plaintiff was against the weight of the evidence.

APPEAL by the defendant, Brookdale Mills, Inc., from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 20th day of September, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 26th day of September, 1921, denying defendant's motion for a new trial made upon the minutes.

*Elbridge L. Adams* of counsel [*Brainard Tolles* with him on the brief], for the appellant.

*Bernard H. Arnold,* for the respondent Hernandez.

*White & Case* [*Vermont Hatch* of counsel], for the respondent Robinson.

PAGE, J.:

In our former opinion the facts of this case are fully stated (194 App. Div. 369). We also stated the rules of law that would be applicable to the case on the new trial that we ordered. The learned trial justice admitted all the documentary evidence which we held to have been improperly excluded on the first trial, but otherwise seriously departed from the principles laid down in that opinion.

The two contracts for the sale of the merchandise were signed at the same time by the plaintiffs. The subject-matter is the same except as to quantity, and the times of shipment are the same and

the terms are identical, except the one for the 2,000,000 bags is more explicit in that it states: " Shaw & Company to draw at four (4) months' sight against your confirmed New York Bankers' credit issued in their favor," and the one for 200,000 bags stated: " Four (4) months New York confirmed Bankers' Letter of Credit, opened through an approved Bank." The learned trial justice in his charge stated that there was an ambiguity in the first contract by reason of the name of Shaw & Company being mentioned that would admit of parol evidence to show whether it was the intention of the parties that it was the contract of Shaw & Company and to be performed by them or whether the defendant was acting for itself as principal, whereas in the second contract there was no such ambiguity and the only question open was whether Munro was acting within the apparent scope of his employment in signing the defendant's name. The question to be determined was whether the defendant was acting as agent for a disclosed principal. As agent for such a principal there was no question of the authority of Munro to sign the name of the defendant.

The plaintiffs had entered into contracts in the past for the purchase of similar bags to be shipped by Shaw & Company from Calcutta, the same as these were to be, with Wells & Co., Inc., as their agents, which were signed with the corporate name by Munro. In fact, the sale of the 2,000,000 bags was negotiated and informally accepted by the plaintiffs with Munro while he was in the employ of Wells & Co., Inc., and the statement in the contract that it is in confirmation of a sale refers to the informal acceptance. Payment was to be made to Shaw & Company by means of drafts drawn by Shaw & Company against a confirmed bankers' credit in their behalf. It was error, therefore, instead of charging the jury in accordance with the principles so clearly stated by Mr. Justice LAUGHLIN (194 App. Div. 380 *et seq.*), to introduce elements that had no bearing on the consideration of the main question whether the parties understood at the time that the defendant was acting as agent for Shaw & Company or was making a contract in its own behalf, which tended to confuse the jury and is probably responsible, in a large measure, for their verdict. Nor should the two contracts have been treated as separate and distinct, for if the plaintiffs knew in making the contract for the 2,000,000 bags that the defendant was acting as agent of Shaw & Company, there was nothing to show that they were acting in a different capacity when they signed the second contract. " It will not do, therefore, to hold that a contract negotiated by an agent for a known and disclosed principal becomes the contract of the agent if in negotiating it verbally or by writing not under seal, he signs

his own name without taking the precaution to tell the person to whom he is writing that he is acting for his principal which is already fully understood." (194 App. Div. 381.)

The defendant not only excepted to the charge but requested the court to charge the jury in conformity with the opinion of this court, which he refused to do.

The price at which these bags were to be delivered was very much below the market price prevailing at that time. The defendant asked Munro when he was on the stand whether he did not at the time this contract was made have an agreement with the plaintiffs by which he would secure a percentage of the profits they would make on this transaction, and when he denied, asked him if he had not so stated and offered to make an affidavit to that effect. He denied that and when papers were produced claimed that those were papers communicated to his attorney by him, and claimed they were privileged. The claim of privilege was allowed. This was not an attempt to have an attorney, as a witness, testify to the contents of documents that had been delivered to him by the client, but the documents were in the possession of the attorney for the defendant who never had any professional relations with the witness. It involved no breach of confidence. If Munro's attorney had wrongfully delivered these papers to some third person, without the consent of the witness, the breach of confidence may have been committed at that time, but it is a well-settled rule that when documents are in court and pertinent to the issue, although they may have been wrongfully obtained, nevertheless, they are admissible in evidence and the court will not try the collateral issue to determine how they were obtained. (*Adams* v. *New York,* 192 U. S. 585, 594.) Furthermore, an inspection of the letter, which was marked for identification, would tend to show that the copy of the affidavit was sent to the attorney for the witness for the purpose of having it exhibited to the attorney for the defendant in negotiations for settlement of other litigation between the witness and this defendant, among others. If that is a fact, there was no element of confidence such as is required to render a communication a privileged one. (5 Chamberlayne Ev. § 3691.) The counsel for the defendant should have been permitted to examine the witness upon these papers and to have offered them in evidence.

The court also erred in the rule of damages; this being a c. i. f. executory contract, the place of delivery is the place from which the shipment was to be made, and the measure of damage would be the difference between the market price at Calcutta and the contract price at the time of the breach, plus the cost of insurance

and freight.    (*Seaver* v. *Lindsay Light Co.*, 233 N. Y. 273.)    There was no evidence as to the market price in Calcutta at the time of the breach.

For these reasons and also that the verdict was against the weight of the evidence, the judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.    Settle order on notice.