S. B. PENICK & COMPANY, Respondent, *v.* HELVETIA COMMERCIAL
Co., INC., Appellant.

First Department, April 3, 1925.

**Sales — c. i. f. contract — damages for breach computed as of place of
shipment — rule of damages not modified by term of payment, " Net
cash against delivery order."**

The rule that damages for the breach of a c. i. f. contract must be computed
as of the place of shipment is not modified by the terms of payment, " Net
cash against delivery order.",

APPEAL by the defendant, Helvetia Commercial Co., Inc., from
a judgment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of New York on the 9th day
of April, 1924, upon the verdict of a jury.

*Arthur Frank* [*William A. Stern* with him on the brief], for the
appellant.

*Benjamin P. DeWitt*, for the respondent.

MARTIN, J.:

This action was brought to recover $13,888, with interest, as
damages for breach of a written contract of sale. The plaintiff was
the buyer. The defendant was the seller. The contract was in
writing and was dated September 30, 1919, and called for the ship-
ment of ten tons of insect flowers from Trieste during October,
1919. The contract price was thirty-eight cents per pound. The
terms were c. i. f. New York. The verdict of the jury is based upon
a finding of the market price at New York city, or a difference of
fourteen and one-half cents per pound between the contract price
and the market price.

The rule of damages to be applied is the sole question here for
review. We are of the opinion that the trial justice erroneously
held that the damages should be measured by the market price at
New York. Both parties appear to agree that if this is a c. i. f.
contract, a wrong rule of damages was followed.

The appellant contends that this contract is a c. i. f. contract.
The respondent contends that it is not a straight c. i. f. contract,
but a c. i. f. contract modified by a clause that the delivery of the
goods was to be made only upon receipt of cash in New York city.
The clause in question is solely with reference to the terms of pay-
ment and is as follows: " Terms: Net cash against delivery order."

The terms of payment do not change the form of the contract.
(See *Standard Casing Co.* v. *California Casing Co.*, 233 N. Y. 413.)

In 2 Williston on Sales (2d ed. § 599-f) the law governing damages is stated as follows: " It seems impossible to distinguish the case from that usual in f. o. b. contracts, for in such contracts as well as in c. i. f. contracts, the seller often retains a lien or security title by means of the bill of lading. The American authorities, therefore, deal with the matter as a contract for the sale of goods, holding that though the seller still may retain a security title, he has completed his duty with reference to the goods when he has shipped them and that the market value at the place of shipment accordingly furnishes the test."

It follows, therefore, that the damages must be computed as of the place of delivery and shipment.

In *Seaver* v. *Lindsay Light Co.* (233 N. Y. 273) the Court of Appeals stated the rule as follows: " Unless there is something in a c. i. f. contract to indicate to the contrary, the seller completes his contract when he delivers the merchandise called for to the shipper, pays the freight thereon to point of destination, and forwards to the buyer bill of lading, invoice, insurance policy and receipt showing payment of freight."

In *Smith Co.* v. *Moscahlades* (193 App. Div. 126) this court said: " This consummated the contract which became what is known as a ' c. i. f.' contract, which is a well-known form of shipping contract and means that the purchaser pays a fixed price for which the seller furnishes the goods and pays the freight and insurance to the point of delivery and that all risks, while the goods are in transit, are for the account of the buyer. Under such contracts the seller fulfills all of his obligations by putting the cargo on board and forwarding to the purchaser a bill of lading and a policy of insurance of the kind then current and customarily issued in the trade, and if the goods had not been paid for in advance it was customary to present a draft for the purchase price accompanied by the bill of lading and policy of insurance and a credit slip for the insurance and freight if not actually paid for by the shipper, which documents were to be delivered to the purchaser on his paying the draft, and the insurance is for the protection of the purchaser, who assumes all risks after the goods have been placed on board; and this constitutes a delivery by the seller under such a contract and title thereupon passes to the buyer even though it be stated in the contract that delivery was to be made at the point of destination."

In *Hernandez* v. *Brookdale Mills* (201 App. Div. 325) the following statement of the law was set forth: " The court also erred in the rule of damages; this being a c. i. f. executory contract, the place of delivery is the place from which the shipment was to be made, and the measure of damage would be the difference between the market

price at Calcutta and the contract price at the time of the breach, plus the cost of insurance and freight."

In the Yale Law Journal (Vol. 30, p. 91) the law is stated as follows: " The English authorities are overwhelmingly in favor of the proposition that under a ' c. i. f.' shipment, title passes to the buyer immediately on delivery to the carrier."

The law has been well expressed by Lord Chancellor EARL LOREBURN, writing in an English case, *E. Clemens Horst Co.* v. *Biddell Bros.* (L. R. [1912] A. C. 18), where he said: " This is a contract usually called a c. i. f. contract, under which the seller is to ship a cargo of hops and is to contract for freight and to effect insurance; and he is to receive 90s. per 112 lbs. of hops.    The buyer is to pay cash.    But when is he to pay cash?    The contract does not say.    The buyer says that he is to pay cash against physical delivery and acceptance of the goods when they have come to England.    Now, s. 28 of the Sale of Goods Act* says in effect that payment is to be against delivery.    Accordingly we have supplied by the general law an answer to the question when this cash is to be paid.    But when is there delivery of goods which are on board ship?    That may be quite a different thing from delivery of goods on shore.    The answer is that delivery of the bill of lading when the goods are at sea can be treated as delivery of the goods themselves, this law being so old that I think it is quite unnecessary to refer to authority for it."

We are of the opinion, therefore, that this judgment must be reversed, especially in view of the fact that the attention of the court was called to the erroneous rule of damages that was being applied.

The court was in error in holding that the market price at New York and not at Trieste should determine the damages to be recovered under the contract.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

DOWLING, MERRELL, McAVOY and BURR, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.

---

* See Sale of Goods Act, 1893 (56 & 57 Vict. chap. 71), § 28.    See, also, Pers. Prop. Law, § 123, as added by Laws of 1911, chap. 571, known as the Sales of Goods Act.—[REP.