WHITE v. THACKER et al.

(Circuit Court of Appeals, Fifth Circuit. February 2, 1897.)

No. 528.

1. TRESPASS TO TRY TITLE—GOOD FAITH OF CONVEYANCE—EVIDENCE—POWER OF ATTORNEY.

In an action of trespass to try title, in which a substantial issue is the good faith of a conveyance under which the plaintiff claims, the transactions of all the parties touching the land in controversy become material, and deeds purporting to be made under a power of attorney given by the plaintiff are entitled to be considered by the jury, upon the question of good faith, whether or not such power is in a form to make the deeds executed under it sufficient to raise an outstanding title.

2. WITNESSES—PRIVILEGED COMMUNICATIONS.

When a party has introduced in evidence letters written to him by his attorney in reference to the transactions affecting the matters in issue, he thereby opens the door to justify and require the court to admit the testimony of such attorney, when called by the opposite party to testify as to such transactions.

3. REVIEW ON ERROR—WAIVER OF JURY—SPECIAL FINDINGS.

When a case has been tried by the court without a jury, pursuant to stipulation, under Rev. St. § 700, the circuit court of appeals will not make inquiry as to the correctness of special findings of fact made by the trial court. City of Key West v. Baer, 13 C. C. A. 572, 66 Fed. 440, followed.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

Robt. G. Street and M. F. Mott, for plaintiff in error.

E. P. Hamblin, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

McCORMICK, Circuit Judge. On September 20, 1892, John F. White, the plaintiff in error, brought this action of trespass to try title to about 30 acres of land in Harris county, Tex., against R. J. Thacker, W. J. Coulter, James Winlock, John Woods, and Lem Collins. The petition is in the statutory form. All of the defendants answer with the formal statutory plea of not guilty, and R. J. Thacker pleaded specially the statute of limitations. A jury was waived by stipulation in writing, and the matters of law as well as of fact were submitted to the court without a jury.

The land in controversy, and two other tracts, was purchased on June 2, 1876, and a deed embracing the three tracts was made to Jennie G. White, reciting a cash consideration. Afterwards George White, the father of Jennie G. White and of the plaintiff, together with Jennie G. White, became indebted to John Sweeney, and gave him their note for $600, secured by mortgage bearing date April 9, 1878, on one of the tracts of land conveyed to Jennie G. White in the deed above mentioned. Default having been made in the payment of the note, Sweeney obtained judgment against the makers, with foreclosure of the mortgage upon the land, on December 8, 1880. Under this judgment of foreclosure the mortgaged premises were sold on February 1, 1881, the plaintiff in the judgment becoming the purchaser at a price that did not extinguish the judgment. An execution on the judgment was run against other property of Jennie G. White, under which the land in controversy was sold, and purchased by the plaintiff in the judgment, June 6, 1882. A sheriff's deed therefor to John Sweeney was recorded June 28, 1882. On March 18, 1880, Jennie G. White conveyed all the property embraced in the deed to her first above mentioned to the plaintiff, John F. White. On August 31, 1883, the plaintiff made a power of attorney to his father, George White, which was recorded in September, 1883, appointing him attorney in fact to represent the plaintiff in all litigation, and undertaking to authorize him "to sell or bargain all that parcel of land on Clear creek, in Harris county and Brazoria county, known as the 'D. C. Hall Headright,' containing 553½ acres; also to bargain and sell the same as if I had been there myself to act upon the Thomas Earle league on ———, near Lynchburg, of 553½ acres; also 125 acres in Polk county out of the Stublefield tract; also about thirty acres out of the Luke Moore league in Harris county, near the city of Houston,—all in Texas; also a tract of 320 acres in Alabama, Lauderdale county, near Florence, known as the 'Hudson Beck Tract.'" On March 9, 1885, George White, purporting to act under the above-recited power of attorney, executed a deed for the three tracts to Trippe & Beaird, of Alabama, reciting a cash consideration, which was filed for record October 2, 1885. On May 2, 1885, also purporting to act under said power, George White executed a deed for the same land to James McEwan, of Detroit, Mich. This deed recited a cash consideration, and was filed for record the day of its execution. In May, 1886, John

Sweeney conveyed the land in controversy to W. J. Coulter. There was proof tending to show that the defendants and those under whom they claim had had successive, continuous possession of the premises from December, 1882, till the institution of this action. Along with other proof offered by the defendants under their plea of not guilty, they offered the power of attorney from John F. White to George White, the deed from John F. White by George White to James McEwan, and the deed from John F. White by George White to William H. Trippe. There was proof tending to show that the cash consideration mentioned in the deed to Jennie G. White was money belonging to her insane mother, and that she took the title charged with a secret trust in favor of her mother. There was proof also tending to show that she transferred this title to her brother, John F. White, the plaintiff, in furtherance of the purpose that the same should be held for their insane mother.

The court made special findings of fact as follows:

"(1) That the plaintiff has no regular chain of title from the sovereignty of the soil, because of defective descriptions and acknowledgments. (2) That Jennie G. White acquired good title to the lands in controversy by deed from A. A. Tucker of date June 2, 1876, and through the partition proceedings in the district court between Emily Ann Tucker and said Jennie G. White, and shown in the abstract of title of defendants. (3) That the common source of title between plaintiff and defendants is Jennie G. White. (4) That the conveyance or deed made by Jennie G. White to John F. White on the 18th day of March, 1880, was made by Jennie G. White to hinder and defraud her creditors and the creditors of George White, and especially to hinder, delay, and defraud John Sweeney, to whom said Jennie G. and her father, George White, were at the time indebted; and that said deed to John F. White was void. (5) That the deed from John F. White by George White, his agent and attorney in fact, to Trippe & Beaird, and the deed from said John F. White by said George White, as attorney in fact, to James McEwan, to the land in controversy, constituted an outstanding title of which defendants could avail themselves. (6) That defendants are entitled to recover upon said outstanding title and upon their pleas of limitation of three, five, and ten years. And to the foregoing findings and conclusions plaintiff duly excepts."

And rendered judgment:

"That the plaintiff take nothing by his suit, and that the defendants go hence without day, and recover of the plaintiff all costs about this suit incurred, and have execution therefor."

The assignment of errors suggests, first, that the court erred in admitting the deeds to the land in controversy from John F. White by attorney, George White, to James McEwan and to William H. Trippe and James P. Beaird. In the abstract of title filed by the defendants Thacker and Coulter in response to plaintiff's demand, the power of attorney and the deeds just mentioned were embraced, and were followed by the memorandum that "these three instruments will be offered principally for the purpose of showing outstanding title against the plaintiff." Plaintiff contends that they do not show outstanding title, because of the patent defect and ambiguity in the description of the land in the power of attorney. The defendant in error suggests and urges that the testimony of the plaintiff—which testimony was taken by deposition—refers to this power of attorney as having been acted upon by his father, George White; that the testimony was taken

long after the transaction, the deed by the attorney in fact described the land in controversy, and the plaintiff's testimony recognizes it as having been conveyed under the power of attorney, and does not question the authority of his attorney in fact, but only insists that the authority was never exercised. It is, however, unnecessary for us to pass on these contentions, for a substantial issue in the case was the good faith of the conveyance from Jennie G. White to the plaintiff, and on that issue the transactions of all the parties touching the land in controversy became material, and the purported dealings under the power of attorney, whether sufficient to raise an outstanding title, were circumstances to be considered by the jury in passing upon this question of good faith.

The plaintiff in error complains that the court erred in admitting in evidence that portion of Thacker's testimony wherein he testifies to the alleged fraud of Jennie G. White and George White and of plaintiff in conveying the land in controversy to any person for the purpose of defrauding their creditors, and particularly John Sweeney, the vendor of W. J. Coulter, because, it being shown by their evidence that Thacker was the attorney and confidential adviser of George White, and a party to said fraud, if any, it was incompetent for him to testify on that subject. Before Thacker's testimony was offered in the case, the plaintiff had given in evidence eight letters written on different dates, beginning May 25, 1887, and ending September 9, 1887, from the witness Thacker to George White, in reference to transactions affecting this land, and Thacker's connection with it as White's attorney, which opened the door so as not only to justify the court in admitting Thacker's testimony, but to constrain the court to admit it.

The tenth specification in the assignment of errors is that the court erred in rendering judgment against the plaintiff, specifying thereunder five grounds as a basis for the assignment, but not specifying that the special findings of fact did not support the judgment. It is manifest to us that the first and the fourth special findings of fact do support the judgment, and for this reason this assignment of error is not well taken. For the same reason, the second and third specifications of error become immaterial.

The fifth, sixth, seventh, and ninth specifications suggest that the court erred in its findings. Touching these assignments, the plaintiff contends that, as this cause was tried by the court without the intervention of a jury, on written stipulations of the attorneys, and all the facts in evidence in the court below have been brought before this court, the case should be considered and reviewed here according to the practice on appeals in equity, and equitable principles in like manner applied to its determination; and in support of this contention he relies upon section 700, Rev. St. U. S., Field v. U. S., 9 Pet. 182, and U. S. v. King, 7 How. 854. The case cited from 9 Pet. was decided in 1835, and that from 7 How. in 1849. The statute was passed in 1865. We have had occasion in a number of recent cases to construe section 700, and to announce the rules of practice under it as deduced by us from the terms of the statute and the subsequent

decisions of the supreme court. Our views on that subject are fully stated in the opinion of the court in the case of City of Key West v. Baer, 30 U. S. App. 140, 13 C. C. A. 572, 66 Fed. 440. We must, therefore, decline to make inquiry as to the correctness of the special findings of fact made by the circuit court in this case.

There having been no error in the admission of testimony, and the special findings of fact being sufficient to support the judgment, the judgment of the circuit court must be affirmed.