## THE "GUL DJEMAL."[1]

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 83.    Argued January 4, 1924.—Decided February 18, 1924.

The objection that a vessel, owned, possessed, manned, and operated by a foreign State, but engaged in ordinary commerce under charter to a private trader, is immune to libel in the District Court for services and supplies, can not be raised by her master, who, although a naval officer, is not functioning as such, and is not shown to have authority to represent his sovereign in making the objection. P. 94.

296 Fed. 567, affirmed.

APPEAL from a decree of the District Court sustaining a libel against a ship, for services and supplies.

*Mr. William A. Purrington* and *Mr. John M. Woolsey,* with whom *Mr. Frank J. McConnell* was on the brief, for appellant.

*Mr. Oscar R. Houston,* with whom *Mr. Ezra G. Benedict Fox* was on the brief, for appellee.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Seeking to recover for supplies and services furnished at New York during November, 1920, in order to fit her

---

[1] The docket title of this case is: *Steamship "Gul Djemal," her engines, etc.; Hussein Lutfi Bey, Master,* v. *Campbell & Stuart, Inc.*

for an intended voyage across the Atlantic, appellee libeled the steamship *Gul Djemal* and caused her arrest under the ordinary admiralty practice. Her master, appearing for the sole purpose of objecting to the court's jurisdiction, claimed immunity for the vessel because owned and possessed by .the Turkish Government, and asked that she be released. No one except the master has advanced this claim.

The parties stipulated:[1] The Turkish Government and the United States are at peace with each other, but diplomatic relations have been severed. The *Gul Djemal* is the absolute property of the Turkish Government and under the administration of the Transport Section of the Ministry of Marine. That government employed and

---

[1] " First: That at all the times mentioned in the libel herein, and at the time of the arrest of the *Gul Djemal*, the *Gul Djemal* was owned by the Turkish or Ottoman Government, that it flies the Turkish flag; that Turkey has but one flag, for both national and commercial uses; that it is registered in the name of Seire-Seffain Administration; that the *Gul Djemal* is the absolute property of the Ottoman Seire-Seffain Administration, the third division of the Ministry of Marine of the Turkish Government, which is attached to the Ministry of War; that the maritime title has been given to the Administration Seire-Seffain by the Ministry of War. Said Seire-Seffain Administration, at the times above mentioned, was (and is) the Transport Section of the Ministry of Marine, and was (and is) charged with the control of transport vessels of the Turkish Government, and said vessels, (of which the *Gul Djemal* was one) which are capable of commercial uses, are, when not used as transports, used in commerce; whether such vessels are used as transports or in commerce is subject to the direction of the Ministry of Marine, which, through departments other than the Seire-Seffain, has charge of battleships, artillery, torpedoes, wireless, and engineering work pertaining to all the vessels of the Turkish Navy; that the *Gul Djemal* was transferred for operation to the Administration Seire-Seffain from the Ministry of War in 1914 and has since been under the control of Administration of Seire-Seffain.

" Said Seire-Seffain Administration, at the times above mentioned, had (and has), as its head, a military officer of the Turkish Govern-

paid the master, officers and crew—the master being a
reserve naval officer—and was in possession of the ship
when arrested.  She "was engaged in commercial trade,
under charter for one round voyage to George Dedeoglou,
who engaged to carry passengers and goods for hire, and
in such trade the *Gul Djemal*, was not functioning in a
naval or military capacity, nor was there anything of a
naval or military character connected with the voyage of
the *Gul Djemal* from Constantinople to New York and
return."

The court below denied the alleged immunity and
passed a decree for the libellant.  Upon this direct appeal
only the question of jurisdiction is presented.  The rele-
vant certificate follows:

" The sole question raised by the answer of the claimant
herein, and the sole issue before this court, was the juris-

ment, in the active or reserve service of the Turkish Government, and
said head must be, at all times, a military officer in the employ of the
Turkish Government, the Seire-Seffain Administration being charged
with the transport of troops, and at all the times above mentioned,
said head of the Seire-Seffain Administration was a Colonel; although
said head of the Seire-Seffain Administration, at the times above
mentioned, was, in respect of the *Gul Djemal*, not functioning in a
military or naval capacity.

" Second: That at all the times mentioned in the libel herein, and
at the time of the arrest of the *Gul Djemal*, the *Gul Djemal* was in
the possession of the Turkish Government, being manned by a master,
officers and crew employed by or under the direction of said Seire-
Seffain Administration, and paid by the Treasury Department of the
Turkish Government through the Administration Seire-Seffain; said
master, at the times above mentioned, was (and is) a reserve officer
in the Turkish Navy employed by the branch of the Ministry of
Marine known as the Administration Seire-Seffain, and the navigating
officer was a Lieutenant in the active service of the Turkish Navy,
both detailed by the said Ministry of Marine to serve on the *Gul
Djemal* during the times above mentioned, but in such service they
were not performing any naval or military functions, although they
were subject to any orders from the department of the Turkish
Government charged with naval or military affairs; the other officers

diction of the court over the steamship *Gul Djemal,* a vessel owned, manned, operated by and in the possession of the sovereign government of Turkey, at peace with the Government of the United States of America. The allegations of the libellant that it had furnished supplies to the vessel, were admitted by the claimant, whose answer set up that the vessel was immune, as a sovereign owned vessel, from the process of this court, and that the vessel was not within the admiralty and maritime jurisdiction of this court. I have granted a decree for the amount prayed for by the libellant, and have denied immunity to the vessel because at the time the cause of action and

and entire crew of the *Gul Djemal,* during the times above mentioned, were civilians, paid by the Turkish Government.

" Third: That at all the times mentioned in the libel herein, and at the time of the arrest of the *Gul Djemal,* the *Gul Djemal* was engaged in commercial trade, under charter for one round voyage to George Dedeoglou, who engaged to carry passengers and goods for hire, and in such trade the *Gul Djemal* was not functioning in a naval or military capacity, nor was there anything of a naval or military character connected with the voyage of the *Gul Djemal* from Constantinople to New York and return.

" Fourth: That the Turkish Government, prior to the time mentioned in the libel herein, had severed diplomatic relations with the United States of America, advising its peoples by proclamation, however, that American institutions should not be molested but should be treated as heretofore; that said diplomatic relations have not been resumed; although the United States of America maintains unofficial relations with the Turkish Government by American Consular representatives, and through the medium of a High Commissioner; that during said period of the severed relations, the Spanish Ambassador to the United States has represented, and still represents, Turkish interests in the United States, and has been recognized as such representative by the Department of State of the United States of America.

" Fifth: That the Turkish or Ottoman Government, and the Government of the United States of America, are sovereign governments, and were at all the times mentioned herein, at peace with each other, although the Turkish or Ottoman Government was and is an ally of the enemy of the United States in the World War."

liability on which the libel is founded were created, and at the time the vessel was seized under process of this court, she was, although owned, manned by and in the possession of the sovereign government of Turkey, engaged in commercial trade, under charter for hire to a private trader; and furthermore, because diplomatic relations between the United States and Turkey were then severed and no appropriate suggestion was filed from the State Department of the United States."

Appellee maintains that whatever may be the proper rule in our courts concerning the ultimate immunity of vessels owned by foreign governments and employed in ordinary trade and commerce, such immunity will not be granted upon the mere claim of the master, especially when the United States has no diplomatic relations with the sovereign owner. Such claim can be made only by one duly authorized to vindicate the owner's sovereignty. *Ex parte Muir*, 254 U. S. 522, 532, 533, is relied upon to support this view. It is there said—

"As of right the British Government was entitled to appear in the suit, to propound its claim to the vessel and to raise the jurisdictional question. . . . Or, with its sanction, its accredited and recognized representative might have appeared and have taken the same steps in its interest. . . . And, if there was objection to appearing as a suitor in a foreign court, it was open to that government to make the asserted public status and immunity of the vessel the subject of diplomatic representations to the end that, if that claim was recognized by the Executive Department of this government, it might be set forth and supported in an appropriate suggestion to the court by the Attorney General, or some law officer acting under his direction."

Treating *Ex parte Muir* as relevant, appellant insists that within the meaning of the declaration there made the master of the *Gul Djemal*, a duly commissioned officer of

the Turkish Navy, was the accredited and recognized representative of that government, possessed of adequate authority to protest against the seizure and object to the court's jurisdiction.

We agree with the view advanced by the appellee. *The Anne,* 3 Wheat. 435, reaffirmed by *The Sao Vicente,* 260 U. S. 151, is enough to show that the immunity could not have been successfully set up by a duly recognized consul, representative of his sovereign in commercial matters, in the ordinary course of his official duties, and there seems no adequate reason to presume that the master of the *Gul Djemal* had any greater authority in respect thereto. Although an officer of the Turkish Navy, he was performing no naval or military duty, and was serving upon a vessel not functioning in naval or military capacity but engaged in commerce under charter to a private individual who undertook to carry passengers and goods for hire. He was not shown to have any authority to represent his sovereign other than can be inferred from his position as master and the circumstances specified in the stipulation of facts.

*Affirmed.*

MR. JUSTICE HOLMES concurs in the result.