## KUNGLIG JARNVAGSSTYRELSEN v. DEXTER & CARPENTER, Inc.

Circuit Court of Appeals, Second Circuit.
April 8, 1929.

No. 141.

196

See, also (D. C.) 299 F. 991; (D. C.) 300 F. 891; (C. C. A.) 20 F.(2d) 307.

Gustav Lange, Jr., of New York City, for appellant.

Haight, Smith, Griffin & Deming, of New York City (Charles S. Haight and Wharton Poor, both of New York City, of counsel), for appellee.  .

Before MANTON and SWAN, Circuit Judges, and CAMPBELL, District Judge.

SWAN, Circuit Judge (after stating the facts as above). More than 50 errors have been assigned, but the questions presented for decision are comparatively few in number. The chief attack is based upon a claim of sovereign immunity. Before discussing that question, however, we will deal with other alleged errors.

The theory of the counterclaim was that the contract of December 4, 1919, nominally between Dexter & Carpenter and Beijer & Co., was really made by the latter as agent for the Railways, or, if not originally so made, was subsequently ratified and adopted by the Railways as its contract. In opposition to this theory, the Railways contended that Beijer & Co. was an independent contractor, from whom they purchased the coal under a contract originally made on November 1, 1919, and modified by a document dated January 16, 1920. These opposing contentions were submitted to the jury, whose verdict is equivalent to a finding that the Railways either authorized or adopted the contract between Beijer & Co. and Dexter & Carpenter. Without specifying the evidence which leads us to the conclusion, it suffices to say that there was enough evidence to justify leaving the issues of agency and ratification to the jury.

Much of the evidence relating to the agency of Beijer & Co. consisted of declarations by the agent, which by themselves would be inadmissible to establish the fact of agency. There was, however, other evidence tending to prove such fact. The original complaint of the Railways alleged the agency of Beijer & Co. and the making by them on the Railways' behalf of a contract with Dexter & Carpenter. This complaint was verified on information and belief by the Railways' attorney. After the defendant's counterclaim was interposed, the allegations of agency were stricken from the complaint by amendment, and on the trial much evidence was introduced to prove that the attorney was not authorized to make such allegations, and that he had made them under a mistaken interpretation of the facts

then known to him, and without complete information as to the relations between the Railways and Beijer & Co. The court left to the jury the determination of what weight to give to the allegations of the original complaint in the light of all the evidence.

■ Error is now assigned to the receipt in evidence of the original complaint, which was offered by the defendant both as evidence of agency, and as a formal ratification of the contract. One ground of objection to its admission was lack of proof of authority of the Railways' attorney to bind his client by the averments of the pleading. Such an objection is clearly not sustainable. A pleading prepared by an attorney is an admission by one presumptively authorized to speak for his principal. See Putnam v. Day, 22 Wall. 60, 22 L. Ed. 764; Shaft v. Phœnix Mut. Life Ins. Co., 67 N. Y. 544, 23 Am. Rep. 138; N. E. Road Machinery Co. v. Vanderhoof, 19 F.(2d) 331 (C. C. A. 1); Christy v. Atchison, T. & S. F. Ry. Co., 233 F. 255 (C. C. A. 8).

■ A further objection was based upon the fact that the complaint had been superseded by an amended pleading. This objection is likewise unavailing. When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent. 2 Wigmore, Evidence, § 1067; Evans v. Daniel, 289 F. 335 (C. C. A. 9); Ranken v. Probey, 136 App. Div. 134, 120 N. Y. S. 413; Daub v. Englebach, 109 Ill. 267; Guy v. Manuel, 89 N. C. 83. If the agent made the admission without adequate information, that goes to its weight, not to its admissibility. There was no error in receiving the original complaint in evidence.

■ Likewise, and for similar reasons, it was proper to receive the Railways' libel against the United States for loss of the cargo of coal shipped on the steamer Alderman. Pope v. Allis, 115 U. S. 363, 6 S. Ct. 69, 29 L. Ed. 393, Lehigh Valley R. R. Co. v. Allied Machinery Co., 271 F. 900 (C. C. A. 2).

■ Under the terms of the contract sued on, shipments of coal were "to begin within 30 days after the raising of the government embargo on export coal and to be completed within 6 months thereafter." It was also provided that shipments were to go forward in as nearly equal monthly installments as possible, that is, "approximately 30,000 tons per month," but deliveries were expressly made subject to all governmental restrictions and regulations. The embargo was lifted on May 1, 1920, but up to September 17, 1920, governmental regulation of the railroads had prevented Dexter & Carpenter from making shipment of more than about 50,000 tons. Consequently, as we held on the previous appeal, they were entitled to ship 30,000 tons during the latter part of September and a like amount in the month of October. Despite our prior decision, the Railways attempts to argue that the right to ship expired on September 30. It would suffice to say that the question is no longer open. Thompson v. Maxwell, 168 U. S. 451, 456, 18 S. Ct. 121, 42 L. Ed. 539. But, were we to go into it again, we should reach the same conclusion. The language of the contract is clear that shipments might continue up to October 31st. We find nothing in Norrington v. Wright, 115 U. S. 188, 6 S. Ct. 12, 29 L. Ed. 366, so much relied upon by appellant, to cast doubt upon this conclusion.

■ It is urged that the verdict is based upon an erroneous measure of damages. This was a c. i. f. contract for the sale of coal to be delivered in Swedish ports, payment to be cash against documents in New York. Under such a contract the seller's duty to deliver will be performed when the coal is loaded on shipboard at the port of shipment. Biddell Bros. v. Clemens Horst Co., 1911, 1 K. B. 214, 220; Sagall v. Finlay, 245 N. Y. 61, 156 N. E. 97; Setton v. Eberle-Albrecht Flour Co., 258 F. 905 (C. C. A. 8). The measure of damages is the difference between the market and the contract price at the time when and place where delivery was due. United States v. Burton Coal Co., 273 U. S. 337, 47 S. Ct. 351, 71 L. Ed. 670, Setton v. Eberle-Albrecht Flour Co., supra. Dexter & Carpenter introduced evidence to establish the market value of the coal at tidewater ports, during September and October, 1920, the freight rates then prevailing for shipment of coal to the designated Swedish ports, and the cost of insurance on such shipments. The total of these three items, deducted from the contract price, would give the seller's damages. There was also testimony that the supply of coal, of ships, and of insurance was sufficient to have enabled Dexter & Carpenter to have shipped during the period in question 60,000 tons of coal of the contract quality. In respect to the measure of damages there was no error.

■ It is further urged that the counterclaim failed to state a cause of action, because it contains no allegation of ability to perform on the part of Dexter & Carpenter. It al-

leged that the Railways repudiated the contract on September 21, 1920, and that Dexter & Carpenter had performed all the conditions of said contract on its part to be performed, except as excused under the contract. Where the buyer repudiates, there is no necessity for the seller to allege a tender, nor his readiness and willingness to perform. See British, etc., Co. v. Cachar Tea Co., [1923] A. C. 48, 63; Alleghenny Valley Brick Co. v. Raymond, 219 F. 477, 482 (C. C. A. 2); Gray v. Smith, 83 F. 824, 829 (C. C. A. 9). He must, of course, prove that he would have been able to make delivery, for otherwise he will fail in his proof of damages; but there is no necessity for an allegation to this effect.

Complaint is made of a comment by counsel for Dexter & Carpenter, in his summing up to the jury, on the absence of Beijer as a witness. The record shows the following:

"Mr. Haight: If I am wrong, why isn't Mr. Beijer here to set me right?

"Mr. Lange: I object to any such statement, your honor. He is not an employee of ours, and not under our control, and any statement made here as to why we have not produced him is improper.

"The Court: Either side might have taken his testimony.

"Mr. Haight: It is a perfectly fair comment.

"Mr. Lange: That is not a proper comment against the Railways, your honor.

"The Court: Objection overruled.

"Mr. Lange: Exception."

It is to be noted that appellant requested no action by the court, but merely registered an exception when the court overruled his protest. This is not the proper way to preserve the point that opposing counsel has made an improper remark to the jury. Brooklyn Heights R. R. Co. v. Ploxin, 294 F. 68, 70 (C. C. A. 2); Devine v. Chicago M. & St. Paul Ry. Co., 194 F. 861 (C. C. A. 7). But, in any event, we should not regard the incident as constituting reversible error.

We now reach the appellant's most serious grounds of attack upon the judgment, based upon the claim of sovereign immunity. It is asserted that no judgment can be entered against a foreign sovereign government without its consent, and that consent to litigate its own claim against a defendant does not subject it to an affirmative judgment upon a counterclaim. French Republic v. Inland Nav. Co., 263 F. 410 (D. C. Mo.); In re Patteason-McDonald Shipbuilding Co., 293 F. 192 (C. C. A. 9). And see People v. Dennison, 84 N. Y. 272; Kingdom of Roumania v. Guaranty Trust Co., 250 F. 341, 343 (C. C. A. 2); The Siren, 7 Wall. (74 U. S.) 152, 154, 19 L. Ed. 129; United States v. Eckford, 73 U. S. 484, 18 L. Ed. 920. Cf. United States v. The Thekla, 266 U. S. 328, 45 S. Ct. 112, 69 L. Ed. 313. It is then contended that the same principle of sovereign immunity applies to the property or to the agencies of a sovereign, citing Berizzi Bros. Co. v. S. S. Pesaro, 271 U. S. 562, 46 S. Ct. 611, 70 L. Ed. 1088; Ex parte State of New York, 256 U. S. 490, 41 S. Ct. 588, 65 L. Ed. 1057; Mason v. Intercolonial Railways of Canada, 197 Mass. 349, 83 N. E. 876, 16 L. R. A. (N. S.) 276, 125 Am. St. Rep. 371, 14 Ann. Cas. 574; De Simone v. Transportes Maritimos Do Estado, 199 App. Div. 602, 191 N. Y. S. 864; Oliver American Trading Co. v. Mexico et al., 5 F.(2d) 659 (C. C. A. 2). And from this premise the conclusion is urged that error was committed in the order of May 29, 1925, which struck out, from the Railways' reply to the amended counterclaim, its assertion that plaintiff was an agency of the kingdom of Sweden, and as such entitled to sovereign immunity.

To this contention the defendant answers, first, that the order complained of was correct, because the previous ruling of Judge Hand on the same point had become the law of the case, Commercial Union v. Anglo-South Am. Bank, 10 F.(2d) 937 (C. C. A. 2); and the assignment of errors raises no question as to the propriety of Judge Hand's order. It answers, further, that if the Railways were entitled to sovereign immunity it waived that defense in various ways. See Porto Rico v. Ramos, 232 U. S. 627, 34 S. Ct. 461, 58 L. Ed. 763, Richardson v. Fajardo Sugar Co., 241 U. S. 44, 36 S. Ct. 476, 60 L. Ed. 879. We prefer, however, to deal with the appellant's contention on broader grounds.

The motion to strike out was made upon all the pleadings, and the complaint alleged that the plaintiff was a Swedish corporation, an averment which remained unchanged, despite amendments of the complaint in other respects. The amended counterclaim also alleged incorporation of the plaintiff. In its reply thereto, the plaintiff, appearing specially, shows by its attorney that "the plaintiff is an agency of the friendly foreign sovereign government of Sweden"; that the counterclaim is in effect a suit against such government, and "as such is not maintainable in this court without the consent of the plaintiff"; and that the plaintiff does not

consent to the determination of the counter-claim. This is not an appearance by the kingdom of ·Sweden as a party to the suit, nor the assertion of immunity by that kingdom. It is an assertion by plaintiff corporation of a claim of sovereign immunity. But the assertion of the sovereign's immunity cannot be made by a private party litigant. In Ex parte Muir, 254 U. S. 522, 41 S. Ct. 185, 65 L. Ed. 383, it is said that a foreign government's claim of immunity for an arrested vessel may be asserted, either by its appearance in the suit, or by the appearance of its accredited representative, or by diplomatic representations to our government which result in the Attorney General of the United States suggesting to the court the foreign government's claim of immunity.

In The Gul Djemal, 264 U. S. 90, 44 S. Ct. 244, 68 L. Ed. 574, the claim was set up by the master of a vessel admittedly owned by the Turkish government; but the claim was. held ineffective, because made by one not duly authorized to vindicate the owner's sovereignty. See, also, The Sao Vicente, 260 U. S. 151, 43 S. Ct. 15, 67 L. Ed. 179; Ex parte Transportes Maritimos, 264 U. S. 105, 44 S. Ct. 236, 68 L. Ed. 580; The Sylvan Arrow, L. R. (1923) P. D. 14. These cases, and the reasons for the rule they lay down as to the methods of asserting the immunity of a sovereign, were carefully analyzed by Judge Hand in Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, 300 F. 891 (D. C. N. Y.). It is unnecessary to review them further. Our own case of Oliver Am. Trading Co. v. Mexico et al., supra, went on the ground that, while the action was nominally against both the government of Mexico and the National Railways of Mexico, it was in reality a suit only against the Mexican government, the Railways being "merely a name."

▮▮▮ The appellant, however, contends that cases relating to jurisdiction in admiralty are not controlling in a common-law action, and that in the latter the plea of sovereign immunity may be set up in accordance with the state practice, which is said, on the authority of De Simone v. Transportes Maritimos Do Estado, 199 App. Div. 602, 191 N. Y. S. 864, to permit the issue of immunity to be raised by such a reply as plaintiff filed. Whether this is the state practice we need not decide. If it is, it could not control as against the rule laid down by the Supreme Court in the cases above cited.

The reasons for requiring an accredited representative of a foreign government to present its claim of immunity are as potent when the claim is founded upon an assertion that a corporation defendant is an agency of the sovereign as when it is founded upon the assertion that an arrested vessel is the government's property. In either case the court presumptively has jurisdiction and may proceed. unless the sovereign objects. Consequently, when a private corporation is sued at law, we do not think it is enough for an attorney to appear for it and say it is a governmental agency, and in his opinion immune from suit. In Sharp's Rifle Mfg. Co. v. Rowan, 34 Conn. 329, 91 Am. Dec. 728, it was decided in a carefully reasoned opinion that a plea was insufficient which set up that the defendant held in trust for a foreign government the property sought to be reached by the plaintiff. The government must claim immunity for its agent, and should do so in as formal a manner as when government property is seized.

No precise authority has been found, but reason and the analogies of the cases already cited support the view we announce. It is possible that the Railways may be a corporation similar to the Emergency Fleet Corporation, and no more entitled to sovereign immunity than it. See Sloan Shipyards v. Emergency Fleet Corporation, 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762. It is equally possible that the Railways may be entitled to the sovereign's immunity, but that the sovereign does not wish to claim it. If such protection is to be granted, it must be claimed in the formal and recognized mode.

▮▮▮ Much of the appellant's argument proceeds upon the assumption that the counterclaim is conceded to be against a sovereign government, but we do not think the record bears this out. The amended counterclaim alleged the Railways to be a Swedish corporation. A general denial is not enough to raise the question of incorporation under Civil Practice Rule 93; there must be a specific allegation that the party is not a corporation. Joint-Stock Co. v. Nat. City Bank, 240 N. Y. 368, 148 N. E. 552; Lynett v. Sea Beach Ry. Co., 178 App. Div. 112, 164 N. Y. S. 1029; Nickerson v. Canton Marble Co., 35 App. Div. 111, 54 N. Y. S. 705. The Railways' reply contained no such specific allegation.

▮▮▮ Although unnecessary, prima facie proof of incorporation was made by the introduction in evidence of the admission of this fact contained in the plaintiff's complaint. We find no proof which contradicts it. It is true that Mr. Tausen, an officer of the Railways, was appointed to his office by a royal commission; but it does not necessarily

follow from this that the Railways was not a corporation. It is true, also, that Mr. Lange's affidavit, in opposition to the motion to produce papers, states that the Railways is a department of the government of Sweden, and is not an independent corporation. But this affidavit is not evidence in the case. At most it can be considered only as a suggestion by an attorney of the court that the party sued in the counterclaim is not a private corporation but a department of a sovereign government. Such a suggestion, however, as already indicated, must be made by an accredited representative of the government.

Numerous errors are assigned with respect to the order of April 11, 1928, requiring the production of correspondence. This order was sought pursuant to section 724 of the Revised Statutes (28 USCA § 636). The affidavit in support of the motion for the order set forth that there was reason to expect that the plaintiff would attempt to show that its attorney had no instructions to allege in the original complaint that Beijer & Co. was the agent of the plaintiff, and that, if plaintiff sought to contradict or qualify this admission of agency, then all the correspondence bearing on this question would be admissible. The order entered thereon directed the plaintiff to produce upon the trial all letters and cables in its possession or under its control, or copies, if the originals were not available, relating to this case, or to the contract out of which it arose, or to the relation between Beijer & Co. and the plaintiff with respect thereto. The motion of Dexter & Carpenter, upon which the order was entered, had requested that the consul general of Sweden and the Swedish legation be also included in the direction to produce, but the order as entered was limited to the plaintiff.

Due to the illness of the judge who heard the motion, it was not granted until after the trial had begun, and because of this the Railways applied for an adjournment, and also moved to withdraw a juror. Both motions were denied, and such denial is assigned as error. Under this order, the defendant demanded of plaintiff an inspection of files of the consul general and of the Minister of Sweden relating to the case, as well as the files of plaintiff's attorney, and the trial court directed the latter to produce the papers at his office for inspection over the week-end. Pursuant to this instruction, Mr. Lange's files were produced and examined. The minister certified he had no papers relating to the case, and the matter was dropped as to him. The consul general sent his file under seal to Mr. Lange's office, with a certificate that it constituted the official files from the consular archives, and that he reserved "all rights, privileges, and immunities as such consulate general." The seal was broken and the file was examined by defendant's attorney. Certain of the documents so produced and examined were introduced in evidence on behalf of the defendant when the trial was resumed.

As defendant had anticipated, the plaintiff disputed Mr. Lange's authority to make the allegation of agency, and offered evidence to prove that Beijer & Co. was not the Railways' agent. The question of its attorney's authority being thus raised by plaintiff, and part of the correspondence bearing on that question being offered by it, the attorney's privilege was waived, and all the correspondence became admissible. Hunt v. Blackburn, 128 U. S. 464, 9 S. Ct. 125, 32 L. Ed. 488; White v. Thacker, 78 F. 862 (C. C. A. 5); Western Union Co. v. Baltimore Tel. Co., 26 F. 55 (C. C. S. D. N. Y.).

The most strenuous attack upon the order is directed to the fact that by virtue of it the defendant obtained access to the file of the consul general, who had been the intermediary in correspondence between the plaintiff and its attorney. This is said to have been a violation of the treaty rights of Sweden under the consular convention of 1910. The order directed the plaintiff to produce papers which it possessed or controlled, but it was construed by the parties and the trial judge to require the production of papers of the consul general. In this connection the following colloquy occurred between counsel for the plaintiff and the court:

"Mr. Lange: * * * So far as the consul general's files are concerned, the consul general will produce his files in accordance with the order, in court. We cannot consent that Mr. Haight go into the consul general's office. * * *

"The Court (interposing): But the situation is this: Judge Thacher has made an order directing that the papers be produced; but their production does not amount to a row of beans, unless it is done at a time when the papers can be examined, and the fact ascertained as to whether or not they are of any value in this litigation; so you will arrange with the consul to produce the papers at your office.

"Mr. Lange: Yes; that part will be all right.

"The Court: And let Mr. Haight go there to-morrow and examine them.

"Mr. Lange: That part is all right; but

I want to have it understood that the examination at my office, or any place outside of the court, by Mr. Haight, will be with the same force and effect as if it were made in court.

"The Court: Yes; any remedies that you may have as a result of that examination will not be prejudiced."

Whether the correspondence should be deemed part of the official archives, whether the consul's certificate "reserving all rights" was a sufficient insistence upon his privilege, and whether the examination of the papers under these circumstances was in truth a violation of the treaty, are questions which we think unnecessary to determine. If it be assumed that the consul could not lawfully be required to produce the papers, and that the court's remarks were equivalent to an order that he do so, by what principle can the plaintiff take advantage of that error? Where testimony is privileged, and the witness waives the privilege, or the court disregards it, the party against whom the evidence is used cannot complain of the error. Cloyes v. Thayer, 3 Hill (N. Y.) 564; Morgan v. Halberstadt, 60 F. 592, 596 (C. C. A. 2); Wigmore, Evidence (2d Ed.) § 2270. Even evidence obtained by theft or other illegal means is admissible. Legatt v. Tollervey, 14 East, 302; Adams v. New York, 192 U. S. 585, 24 S. Ct. 372, 48 L. Ed. 575; Hernandez v. Brookdale Mills, 201 App. Div. 325, 194 N. Y. S. 283; Cluett v. Rosenthal, 100 Mich. 193, 58 N. W. 1009, 43 Am. St. Rep. 446; N. Y. C. & H. R. R. Co. v. United States, 165 F. 833, 843 (C. C. A. 1).

While the federal courts hold that the use of evidence illegally obtained by federal officers violates the constitutional rights of a defendant in a criminal proceeding, the rule is not extended to illegal seizures by private persons, nor to civil suits. Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159. It has even been held that the forcible abduction of a person within the territory of a friendly foreign power, in order to bring him within the jurisdiction of a domestic court for trial for crime, presents no valid objection to his conviction. Ker v. Illinois, 119 U. S. 436, 7 S. Ct. 225, 30 L. Ed. 421. As to seizure of property within the boundaries of a foreign state, see The Richmond v. U. S., 9 Cranch, 102, 3 L. Ed. 670, The Anne, 3 Wheat. 435, 436, 4 L. Ed. 428. In the case last cited it is said that the assertion of the violated rights of the foreign sovereign must be made by his proper diplomatic agent. So, in the instant case, if the rights of the Swedish consul or his government were infringed (upon which we do not pass), the plaintiff corporation is in no position to assert them, or to complain that the documents were put in evidence.

Objection is also made that the order was so broad as to amount to a "fishing expedition." We think it is not subject to this charge. Dexter & Carpenter were seeking evidence to support their own case, which required them to prove that Beijer & Co. was the agent of the Railways, or that the latter had ratified their contract. The order was sufficiently limited in this respect. See Carpenter v. Winn, 221 U. S. 533, 31 S. Ct. 683, 55 L. Ed. 842; Bloede Co. of Baltimore City v. Joseph Bancroft & Sons Co., 98 F. 175 (C. C. Del.); Shaefer v. Int. Power Co., 157 F. 896 (C. C. S. D. N. Y.).

Nor do we see any abuse of discretion in failing to grant an adjournment, or to permit the plaintiff to withdraw a juror because the order was served after the trial was under way. The motion for the order had been argued in March, and no prejudice to the Railways was shown to have occurred from the refusal of an adjournment.

Finding no reversible error, we affirm the judgment.