THE UXMAL.

No. 863.

District Court, D. Massachusetts.

Aug. 11, 1941.

A. F. Christiansen, of Boston, Mass., and Sol C. Berenholtz, of Baltimore, Md., for libellant.

Warner, Stackpole, Stetson & Bradlee, of Boston, Mass., for claimant.

Francisco Costillo Najera, Ambassador of Mexico, pro se.

BREWSTER, District Judge.

This libel in rem is brought against the Mexican Steamship Uxmal. It is alleged that the libellant, a stevedore, was injured while discharging a cargo of logs at Baltimore. Later the vessel was attached while in the port of Boston. After different attempts to assert the immunity of the Mexican Republic which were not adequate to question the jurisdiction of this court (see Compania Espanola de Navegacion Maritima, S. A., v. The Navemar et al., 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 667; Puente v. Spanish Nat. State, 2 Cir., 116 F.2d 43), the Mexican Ambassador filed a petition alleging that the vessel was the property of the Republic of Mexico and was possessed and controlled by it, and employed in the public service of the Republic through the Henequeneros of Yucatan, an association organized under the laws of Mexico. (The Henequeneros of Yucatan will hereafter be referred to as the "Association".) In the meantime the Association had appeared generally, had represented that it was the owner of the vessel and as such claimant had secured her release upon a stipulation and deposit of $7,500, whereby the Association submitted to the jurisdiction of the court and agreed to pay the amount of any final decree and to satisfy out of the deposit any execution that might be issued in favor of the libellant.

The petition of the Ambassador was not filed until May 21, 1941, nearly a year after the libel was filed. The prayers are for dismissal of the libel and return of the deposit. Without any responsive pleading being filed by libellant, the case came on for hearing on the question of jurisdiction. I do not understand that libellant objected to the hearing, but he did object to the sufficiency of the petition for the intended purpose. He has entered into a stipulation with the Association and the Ambassador for the purpose of the matters presented at the hearing, in which it is agreed that the State of Yucatan is one of the Federated States of the United States of Mexico and that the exhibits attached to the petition are properly authenticated for admission as evidence. The exhibits attached are (1) a decree of the Government of Yucatan authorizing the formation of Henequeneros de Yucatan as an association, together with regulations relating to the purposes, powers and capitalization of the association and to its governance and qualifications, duties and privileges of members, and (2) a presidential decree granting to the Association the "use and benefit" of the vessel for the term of 20 years, reserving the right to temporarily repossess, at any time, the boat in case of national emergency, the Association to have "full freedom to organize the service and sailing lists of the boat in the manner it considers suitable for its needs." It was further agreed by the parties that when the alleged accident occurred, the boat had on board a cargo of mahogany logs; that when she was libelled she had completed a voyage from Yucatan to Plymouth, Massachusetts, carrying a cargo of sisal consigned by the Association to the Plymouth Cordage Company; that in the papers filed with the United States Customs at the Port of Plymouth, the Association was named as the owner of the boat.

It was also shown in evidence that the vessel was registered in Mexico as the property of the Republic of Mexico.

It will be necessary to make further reference to the provisions of the decree and regulations promulgated by the Government of Yucatan creating the Association.

The Association was organized under constitutional provisions which empowered the executive of a state to form with the producers of raw sisal and of sisal leaves an association in the public interest to operate under the protection of the State and with the intervention of the Federal Govern-

260

ment. The Association was to "enjoy its own independent juridical personality, in accordance with" the Civil Code. There can be no doubt respecting its capacity to contract and to sue and be sued. Its object was "to sell directly in foreign markets the raw or manufactured sisal that its members bring to it and that is produced in Yucatan, and, furthermore, to supervise, govern, direct and regulate the sisal industry in its technical, economic and social aspects * * *." Among its powers were those of developing new sources of production and opening new markets for the fibre, and to protect and develop the said industry with all means within its power. It was expressly empowered to "attend to the establishment of a fleet of boats for the better distribution of the products." The capital was provided in part by its members, in part by the State of Yucatan and in part by the Federal Government. The membership of the Association was composed of producers of sisal and representatives (Ejidal Commissaires) of tenant farmers (ejidatarios) on Government land operating collectively (ejidos). The members were obliged to deliver to the Association all sisal and sisal leaves produced by them, and to receive therefor such advances as the Association might determine and their respective share in the annual distribution. The administration of the affairs of the Association was in the hands of an executive board, consisting of a chairman, vice chairman, and eleven board members. The chairman was the Governor of Yucatan. The vice chairman was a representative of the Federal Government. The board members were chosen by groups of members, nine of them by "ejidal" groups. The chairman and vice chairman together had the right to veto any resolution of the board members, if they thought the general interests of the Federation or State would be harmed by it.

Several questions are presented for consideration, but before dealing with them it may be well to dispose of the contention made at the hearing that the petition of the Ambassador on its face was not sufficient to present a claim by a foreign friendly sovereign to the immunity from process of courts of the United States which has long been recognized and extended first to warships, The Exchange v. M'Faddon et al., 7 Cranch 116, 3 L.Ed. 287, and later to merchant vessels owned and operated by a foreign nation, Berizzi Brothers Company v.

The Pesaro, 271 U.S. 562, 46 S.Ct. 611, 70 L. Ed. 1088, and even to property other than vessels, if dedicated to public use, Oliver American Trading Co., Inc., v. Government of United States of Mexico et al., 2 Cir., 5 F.2d 659; Mason v. Intercolonial Ry. of Canada, 197 Mass. 349, 83 N.E. 876, 16 L.R. A.,N.S., 276, 125 Am.St.Rep. 371, 14 Ann. Cas. 574.

■ In order to defeat the jurisdiction of this court over a foreign merchant vessel, it is necessary, however, to show not only ownership but a right to possession and that the vessel was in the public service, operated for some national purpose, Berizzi Brothers Company v. The Pesaro, supra; Compania Espanola de Navegacion Maritima, S. A., v. The Navemar et al., supra; The Luigi, D.C., 230 F. 493, 496, and these representations must be made by the foreign sovereign or its duly accredited representative, Ex parte Muir, 254 U.S. 522, 41 S.Ct. 185, 65 L.Ed. 383; The Gul Djemal, 264 U.S. 90, 44 S.Ct. 244, 68 L.Ed. 574; Compania Espanola de Navegacion Maritima, S. A., v. The Navemar et al., supra, and they must be established by proof. The mere suggestion is no longer sufficient. Ex parte Muir, supra; The Sao Vicente, 260 U.S. 151, 43 S. Ct. 15, 67 L.Ed. 179; Compania Espanola de Navegacion Maritima, S. A., v. The Navemar et al., supra; cf. Puente v. Spanish Nat. State, supra.

■ So far as procedure is concerned, the petition of the Ambassador, if supported by proof, would have been adequate to raise the question of jurisdiction, if the Association is not deemed to have already waived immunity and agreed to satisfy libellant's claim out of the deposit.

The first question then is whether immunity is waived.

■ It is settled law that immunity may be waived and a general appearance, voluntarily made, will constitute a waiver. The Sao Vicente, 3 Cir., 295 F. 829, 831.

■ In the case at bar, there was not only a general appearance by the Association, but it expressly submitted to the jurisdiction and entered into an engagement with libellant to pay whatever the court should decree in his favor out of the deposit. The Association having possession, and the right to operate the boat for its own purposes, was competent to waive immunity and submit to the jurisdiction of this court regardless of whether the Uxmal had the status

of a public or private vessel. See Royal Italian Government v. National Brass & Copper Tube Co., 2 Cir., 294 F. 23, 27.

I cannot think that the Ambassador, nearly a year after the release of the boat, can be permitted to now repudiate the stipulation of the Association.

 Moreover, in the absence of evidence to the contrary, it may be assumed that the money substituted for the vessel belonged to the Association. It is difficult to discover any direct interest of the Mexican Republic that would be affected by a decree of this court awarding damages. Granting, however, that the Government had an interest in it, the vessel was beyond the authority of this court when the Ambassador intervened. The Luigi, supra. The Republic is free to exercise its rights to repossess her reserved in the presidential decree.

There is no property within this District belonging to the United States of Mexico, unless the $7,500 deposited is to be regarded as property of the Government. Obviously, it may not be so regarded. The Association was a corporate entity or, in the language of the decree, it enjoyed "its own independent juridical personality." It had the essential attributes of a co-operative association. Its corporate powers were exerted for the common benefit of its members, who were producers of sisal. The governing board was selected by and from its members. It was not exercising the governmental function of a state or nation. It was created, like any corporation, by virtue of decree of the Governor pursuant to laws of the Federal Government. It was not the state or nation exerting governmental powers. Its business and purpose was private, as distinguished from public or national. The fact that the Government contributed to its capital, and is represented on the governing board, or even subsidized the Association out of export taxes, does not render the Association such a national agency, or instrument, that it may claim sovereign immunity, although its activities may tend to promote the agricultural and economic interests of many of the inhabitants of the State of Yucatan. Commercial Pacific Cable Co. v. Philippine Nat. Bank, D.C., 263 F. 218; United States v. Deutsches Kalisyndikat Gesellschaft et al., D.C., 31 F.2d 199; Coale et al. v. Société Co-Operative Suisse Des Charbons, Basle, et al., D.C., 21 F.2d 180; United States v. Strang, 254 U.S. 491, 41 S.Ct. 165, 65 L.Ed. 368; Sloan Shipyards Corp. v. United States Shipping Board Emergency Fleet Corporation, 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762.

The exhibits and testimony presented in support of the petition of the Mexican Ambassador do not establish the allegations necessary to be proved, namely, that the S/S Uxmal was in the "possession and control and employed in the public service of the Republic through the said Henequeneros of Yucatan" when the vessel was attached.

The Ambassador, therefore, has not shown that he should prevail in his request for a dismissal of the libel and return of the deposit. This conclusion rests upon the grounds that the sovereign immunity claimed does not extend to property of the Association or to a Mexican vessel committed to its charge which has been released on stipulation of the Association accompanied by a general appearance in these proceedings.

The petition of the Ambassador, therefore, is denied, and the case may stand for further hearing on the merits.