DADE DRYDOCK CORP., Libellant,

v.

THE M/T MAR CARIBE, her equipment, engines, boilers, etc., in rem and against Co. de Transporte Mar Caribe, S.A. in personam, Respondents.

F. A. ROVIROSA, Libellant,

v.

THE M/T MAR CARIBE, her equipment, engines, boilers, etc., in rem, Respondent.

Samuel BERGER, Libellant,

v.

THE M/T MAR CARIBE, her equipment, engines, boilers, etc., in rem, Respondent.

STROVOLI CIA. DE NAVEGACION, S.A., Libellant,

v.

THE S.S. ETHEL B., her engines, tackle, etc. and Cia. de Transporte Mar Caribe, S.A., Respondents.

Gloria VERDEJA, as Administratrix of the Estate of Segundo Antonio Falcon, Deceased, Libellant,

v.

THE M/T MAR CARIBE, her equipment, engines, boilers, etc., in rem, Respondent.

COMPANIA DE TRANSPORTE MAR CARIBE, S.A., Libellant,

v.

THE M/T MAR CARIBE, her engines, tackle, etc., and Emilio Fernandez Golta, et al., Respondents.

BANCO DE FOMENTO AGRICOLA E INDUSTRIAL DE CUBA, Libellant,

v.

THE M/T MAR CARIBE, her equipment, engines, boilers, etc., in rem and against Compania de Transporte Mar Caribe, S.A., in personam, Respondents.

NATIONAL INSTITUTE OF AGRARIAN REFORM, Successor to Banco De Fomento Agricola E Industrial de Cuba, Libellant,

v.

THE M/T MAR CARIBE, her equipment, engines, boilers, etc., in rem and against Compania de Transporte Mar Caribe, S.A., in personam, Respondents.

Nos. 298–303, 305, 307.

United States District Court
S. D. Texas,
Corpus Christi Division.
Jan. 27, 1961.

Fulbright, Crooker, Freeman, Bates & Jaworski, E. V. Greenwood, Houston, Tex. and Crowell, Rouse & Varian, New York City, for Dade Drydock Corp. and others, libellants.

William B. Butler, U. S. Atty., Jack Shepherd, Houston, Tex., for the United States, for United States Marshal.

Rabinowitz & Boudin, Leonard B. Boudin, New York City, Mandell & Wright, Arthur Mandell and Herman Wright, Houston, Tex., for Republic of Cuba and others.

Robert Eikel, Houston, Tex., for Strovoli Cia. de Navegacion, S. A., libellant.

Eastham, Watson, Dale & Forney, Edward W. Watson, Houston, Tex., for Cia. de Transporte Mar Caribe.

HANNAY, Chief Judge.

M/T Mar Caribe, her equipment, engines, boilers, etc. was attached by the Dade Drydock Corp, as a result of an original libel filed December 29, 1960. Thereafter, Banco de Fomento Agricola e Industrial de Cuba intervened as claimant alleging that it was a credit institution of the Government of the Republic of Cuba.

On January 3, 1961, Samuel Berger, Gloria Verdeja, as Administratrix of the Estate of Segundo Antonio Falcon, Deceased, and F. A. Rovirosa separately filed libels and separately had warrants issued for seizure against the same vessel. Each of the three claimed to have personally advanced $12,000.00 for the use and benefit of the vessel in making necessary repairs and furnishing necessary supplies and to make said vessel seaworthy. Each claimed that no part of their respective $12,000.00 advance had been repaid.

On January 5, 1961, Strovoli Cia. de Navegacion, S. A. filed a libel and had a writ of foreign attachment executed attaching the said vessel.

On January 10, 1961, Compania de Transporte Mar Caribe, S. A. filed suit against the vessel and various individuals named in said libel for the purpose of causing the possession of said vessel to be delivered to said libellant.

Compania de Transporte, Samuel Berger, Gloria Verdeja, as Administratrix of the Estate of Segundo Antonio Falcon, Deceased, and F. A. Rovirosa deny that there has been any default in the mortgage.

On January 11, 1961, Banco de Fomento Agricola e Industrial de Cuba, as libellant, sued the M/T Mar Caribe and Compania de Transporte Mar Caribe, S. A. and had issued a warrant of seizure on said vessel and claimed the right of possession to said vessel. The Republic of Cuba claims that it is also entitled to possession of the vessel because same had been chartered to the Institute Cubano del Petroleo, also known as the Cuban Petroleum Institute.

On January 17, 1961, on an oral motion, all parties to the various suits agreed to a consolidation, and the court did consolidate A. D. Nos. 298, 299, 300, 301, 302, 303 and 307.

It was then announced by attorneys for libellant in Cause No. 298 that this case had been settled by compromise agreement and would be and was dismissed out of the proceedings.

Thereafter, testimony was heard with reference to the other cases, the principal issue being who had the right of pos-

session at this time of the vessel under seizure. The representatives of the Cuban Government claimed that by reason of the fact that the M/T Mar Caribe was a vessel of Cuban registry and the fact that the Compania de Transporte Mar Caribe, S. A. had executed a purchase money note and mortgage in the principal sum of $500,000.00, payable to the Banco de Fomento Agricola e Industrial de Cuba, hereinafter called "Banco," and that because said mortgage was in default, and that because the provisions of the mortgage and the laws of Cuba provide that when a foreclosure proceeding is instituted, (which they claim had been done in Cuba) that that fact entitles the mortgagee to the possession of said vessel. It is further alleged that such mortgagor had violated the terms of the mortgage by incurring indebtedness which attempted to affect the preferential treatment of libellant as provided for in said mortgage and that the compania had failed to pay the indebtedness within thirty days as it had been so incurred contrary to the provisions of said mortgage. The mortgagee further attempted to show in the hearing before the court that the respondent had failed to pay the insurance against the vessel which was an additional reason for its default.

The Banco also claimed that being an arm of the Cuban Government it was entitled to claim of sovereign immunity on behalf of the Republic of Cuba.

Samuel Berger, Gloria Verdeja, as Administratrix of the Estate of Segundo Antonio, and F. A. Rovirosa were the principal owners of the stock in the corporation which mortgaged the vessel to the said bank. Samuel Berger lives in New York. Gloria Verdeja and F. A. Rovirosa formerly lived in Cuba but now live in the United States. A hearing was had in which each of the parties were permitted to make full proof in support of their various contentions.

Institute Cubano del Petroleo claims that as an arm of the Cuban Government it is entitled to the vessel by reason of an agreement entered with Orlando Prado, who was the General Manager. Compania de Transporte and the three principal stockholders of same contend, among other things, that Prado had been discharged prior to Prado's attempt to make such an agreement. Prado claims his contract of employment has not terminated. They also contend that there could be no sovereign immunity granted because the vessel was being used for commercial purposes at the time of the seizure, as distinguished from public purposes, and that where diplomatic relations have been severed with the sovereign who subsequently claims sovereign immunity, such immunity will not be granted to such sovereign unless a formal suggestion is made by the United States State Department suggesting such immunity. In this connection, it is well known that a breach of diplomatic relations between the United States of America and the Republic of Cuba occurred on January 3, 1961. The Compania de Transporte and the three principal stockholders urge that the alleged foreign documents of record and public acts attempted to be offered in evidence by the Cuban Government or its instrumentalities to show their claim to possession of the vessel in these actions are inadmissible because of the provisions of Title 28 U.S.Code, § 1741, which reads:

"Section 1741. Foreign documents, generally; copies. A copy of any foreign document of record or on file in a public office of a foreign country or political subdivision thereof, certified by the lawful custodian thereof, shall be admissible in evidence when authenticated by a certificate of a consular officer of the United States resident in such foreign country, under the seal of his office, that the copy has been certified by the lawful custodian."

Finally, they urge that there is no rule of law absolutely precluding individuals who are stockholders of a corporation owning a vessel from successfully asserting a lien against that vessel under proper circumstances.

I hold that at the time of the hearing before the court, which began

on January 17, 1961, formal diplomatic relations between the United States of America and the Republic of Cuba had been broken. This was done by the President of the United States, who had the perfect legal right to so act. This, of course, resulted in withdrawal of diplomatic recognition of the Republic of Cuba. Therefore, unless and until normal diplomatic relations with the Republic of Cuba have been resumed, the plea of sovereign immunity is not available on behalf of the Republic of Cuba. See: Steamship Gul Djemal, her engines, etc. v. Campbell & Stuart, Inc. (D.C.S.D. N.Y., 1920–re-argument, 1921), 296 F. 563 and (1922) 296 F. 567; (1924) 264 U.S. 90, 44 S.Ct. 244, 68 L.Ed. 574; United States v. Pink, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796.

In The Maret, 3 Cir., 145 F.2d 431, 445, Judge Goodrich, in his concurring opinion, said:

" * * * I find difficulty in seeing a parallel in the case of nonrecognition which seems to me simply absence of recognition. But in the absence of recognition of the foreign government, it seems not improper, in a litigated matter, to deny effect to an act of that government which purports to change the ownership of a chattel many hundreds of miles away from its borders. Therefore, I think the result reached is the correct one."

In the case of the Government of France v. Isbrandtsen-Moller Co., D.C., 48 F.Supp. 631, 633, the court held:

" * * * From that day to the present time the United States has recognized no Government of France. This is evident from the two communications from the Secretary of State and the regulations of the Treasury Department referred to above. Accordingly, on November 9, 1942, the Government of France did not have access to our courts. Guaranty Trust Co. v. United States, 1938, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224.

" * * * However, that does not mean that the action abates or must be dismissed. It means that the action is suspended until France is no longer an 'enemy alien' and a Government of France is again recognized by the United States. This is the rule applicable to actions commenced by enemy aliens. Stumpf v. A. Schreiber Brewing Co., D.C.W.D. N.Y.1917, 242 F. 80; Plettenberg, Holthaus & Co. v. I. J. Kalmon & Co., D.C.S.D.Ga.1917, 241 F. 605; Rothbarth v. Herzfeld, 1917, 179 App. Div. 865, 167 N.Y.S. 199, affirmed 223 N.Y. 578, 119 N.E. 1075."

From what has been said, it necessarily follows that neither the Republic of Cuba nor anyone acting in its behalf had the power to bring suit in this court or to assert any rights of possession to the vessel in question. However, the action does not abate nor is it subject to dismissal. It simply means that the action is suspended until the Government of the Republic of Cuba is again recognized by the United States of America.

Clerk will notify parties.