ANNIE B. MASON *vs.* INTERCOLONIAL RAILWAY OF CANADA & trustees.

Suffolk. January 6, 1908. — February 26, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Practice, Civil,* Suggestion by *amicus curiae,* Motion to dismiss. *Jurisdiction. Foreign Sovereign. Intercolonial Railway of Canada.*

In an action of tort begun by trustee process in the Superior Court, the defendant did not appear, but a member of the bar of this Commonwealth, as a friend of the court, brought before the court a suggestion that the action be dismissed on the ground that the railroad described in the writ as the defendant was the property of the King of the United Kingdom of Great Britain and Ireland; and the procedure received this court's approval.

On an appeal by the plaintiff from an order of the Superior Court dismissing an action of tort against a defendant, named in the writ as the Intercolonial Railway of Canada, for personal injuries alleged to have been received by the plaintiff upon that railway in Canada, it appeared that the railway was not a corporation, that no private individual or corporation had any interest in it, that it was owned and operated by the King of the United Kingdom of Great Britain and Ireland through his government of Canada for the public purposes of Canada, that all the income and revenue arising from its operation were by law appropriated to a fund upon which all the expenses of the government of Canada are chargeable, and that the cost of maintenance and operation of the railway were provided for by appropriation of the parliament of Canada. *Held,* that the action rightly was dismissed, since the courts of this Commonwealth have no jurisdiction to proceed against the public property of a sovereign of a foreign State.

TORT for personal injuries received by the plaintiff while a passenger on the Intercolonial Railway of Canada at Moncton, New Brunswick. Writ in the Superior Court for the county of Suffolk, dated January 18, 1907.

Several corporations and one individual were summoned as trustees, who answered that they had in their possession effects and credits belonging to the Intercolonial Railway, which they

would hold subject to the process served upon them if the court should be of opinion that it had jurisdiction to entertain the action. In each answer was included a copy of a letter of Messrs. Russell and Russell to the trustees stating that the funds held by the trustee to the credit of the Intercolonial Railway were " funds of the British Government and therefore in no way attachable or subject to detention by process of any court in this country."

There also was filed a paper entitled " Appearance, Suggestion and Motion to dismiss Action," which in part read as follows :

" And now comes Arthur H. Russell, counsellor at law, and a member of the bar of this court, and in the above entitled cause respectfully shows to the court that there exists no such body corporate as is described under the name and title of the Intercolonial Railway of Canada, as defendant in this action; and further, he respectfully suggests and shows to the court that the line of railway described in the writ and declaration in this action as the Intercolonial Railway of Canada is in fact the property of the British Crown and is owned and operated by His Britannic Majesty in the right of his government of Canada ; . . . wherefore the said Arthur H. Russell respectfully suggests to the court that it is in derogation of the sovereignty and independence of His Britannic Majesty and contrary to the law and comity of nations that funds belonging to His Britannic Majesty should be withheld by a process of this court or that this court should take jurisdiction of this action, and he moves that the said action be forthwith dismissed."

There was a hearing before *Fessenden*, J., who made an order in the following language : " Motion allowed after hearing and action ordered dismissed." The plaintiff appealed.

*N. Wolfman*, for the plaintiff.

*A. H. Russell*, appeared as *amicus curiae*.

KNOWLTON, C. J. This is an action brought by a trustee process to recover damages for personal injuries. The defendant has not appeared, but a member of our bar, as a friend of the court, following the practice approved by Chief Justice Marshall in *Osborn* v. *United States Bank*, 9 Wheat. 738, 870, has brought before the court a suggestion that the action be dismissed, and

also an affidavit of the deputy of the Minister of Justice and
Attorney General of Canada, including a copy of the "Act re-
specting Government Railways," from which it appears that the
so called defendant, the Intercolonial Railway of Canada, is the
property of His Majesty, Edward VII., King of the United King-
dom of Great Britain and Ireland, in the right of his Dominion
of Canada, and is not a corporation. The truth of the matters
thus shown to the court is not questioned. It appears that no
subject, private individual or corporation has any interest or
concern by way of property or direction in the ownership or
working of the Intercolonial Railway, but that it is owned and
operated by the king, through his government of Canada, for
the public purposes of Canada. All income arising from the
operation of it is, by the laws of Canada, appropriated to the
consolidated revenue fund of Canada, upon which fund all
the expenses of the government of Canada are chargeable. All
moneys and income due by reason of the operation or business
of the railway are chargeable as belonging to the King, and are
collectible in his name. Such moneys, when collected, are de-
posited to the credit of the minister of finance and register general
of Canada, and carried to the credit of the consolidated revenue
fund, which fund is appropriated to the public debt and service
of Canada. The cost of maintenance and operation of this rail-
way is provided for by appropriation of the parliament of Canada
out of the consolidated revenue fund, and all the receipts from
the working of the railway are a part of the moneys of Canada,
appropriated to the consolidated revenue fund, and are not used
for the maintenance or operation of the railway, except as the
receipts from customs or excise duties or from any other branch
of the public service are so used. See also *The Queen* v. *McLeod*,
8 Canada Supreme Court, 1, 23.

Upon this suggestion the question at once arises whether the
court has jurisdiction of a suit which is virtually against the
king of a foreign country. An answer in the negative comes
almost as quickly.

The general subject of the immunity of the sovereign power
from the jurisdiction of its own court was considered and dis-
cussed at great length by Mr. Justice Gray, in *Briggs* v. *Light-
boats*, 11 Allen, 157, and, after an exhaustive review of the

authorities, it was held that the action could not be maintained because the lightboats were the property of the United States, a sovereign power. Incidentally the question whether the public property of a foreign sovereign is exempt from the jurisdiction of the courts was discussed, and the cases bearing upon the question were reviewed. In the opinion, on page 186, we find this sentence, which is pertinent to the present case: " The exemption of a public ship of war of a foreign government from the jurisdiction of our courts depends rather upon its public than upon its military character." In *Schooner Exchange* v. *M'Faddon*, 7 Cranch, 116, Chief Justice Marshall gives a very clearly reasoned statement of the principles which control the courts in their decisions that they have no jurisdiction over a sovereign of a foreign State who comes within their precincts. The decision was that the courts of the United States had no jurisdiction over a public armed vessel in the service of a sovereign of another country at peace with the United States. At page 137 we find this statement of a reason for the law that governs such cases: " One sovereign being in no respect amenable to another; and being bound by obligations of the highest character not to degrade the dignity of his nation by placing himself or its sovereign rights within the jurisdiction of another, can be supposed to enter a foreign territory only under an express license, or in the confidence that the immunities belonging to his independent sovereign station, though not expressly stipulated, are reserved by implication, and will be extended to him."

The doctrine that the courts have no jurisdiction to proceed with a suit against the sovereign of another State is established in England in numerous decisions. It applies to all proceedings against the public property of such a sovereign. It was clearly laid down and applied in the cases of *Wadsworth* v. *Queen of Spain*, 17 Q. B. 171, and *DeHaber* v. *Queen of Portugal*, 17 Q. B. 171, 196. It was again applied in *The Constitution*, L. R. 4 P. D. 39, and also in *The Parlement Belge*, L. R. 5 P. D. 197, where an elaborate review of the decisions is given by *Brett*, L. J., who says on page 214: " The principle to be deduced from all these cases is that, as a consequence of the absolute independence of every sovereign authority, and of the international comity which induces every sovereign State to respect the inde-

pendence and dignity of every other sovereign State, each and every one declines to exercise by means of its courts any of its territorial jurisdiction over the person of any sovereign or ambassador of any other State, or over the public property of any State which is destined to public use, or over the property of any ambassador, though such sovereign, ambassador, or property be within its territory, and, therefore, but for the common agreement, subject to its jurisdiction."

In *Vavasseur* v. *Krupp*, 9 Ch. D. 351, 361, Lord Justice Cotton sums up the law as follows: " This court has no jurisdiction, and in my opinion none of the courts in this country have any jurisdiction, to interfere with the property of a foreign sovereign, more especially what we call the public property of the State of which he is sovereign as distinguished from that which may be his own private property. The courts have no jurisdiction to do so, not only because there is no jurisdiction as against the individual, but because there is no jurisdiction as against the foreign country whose property they are, although that foreign country is represented, as all foreign countries having a sovereign are represented, by the individual who is the sovereign." In *Young* v. *The Scotia*, [1903] A. C. 501, there is an elaborate discussion of the exemption of public property from process of the courts of its own sovereignty. The doctrine was applied to a claim for salvage of a public vessel which was used by the Canadian government as a ferry boat, in connection with a line of railway and as a part of the general means of transportation, just as cars are used on the Intercolonial Railway. See also the very recent case of *The Jassy*, 75 L. J. P. D. & A. 93, where the principle suggested for our guidance was applied to a vessel which was the property of the King of Roumania.

The principles which have long been recognized as applicable to the dealings of all nations with one another, as well as the formal decisions of the courts, make it plain that this action must be dismissed for want of jurisdiction. The plaintiff must seek her remedy in the courts of the country in which she received her injury, where there is a statutory provision for such cases.

· *Action dismissed.*