ROBERT N. MILLER ET AL.

*vs.*

FERROCARRILL DEL PACIFICO DE NICARAGUA.

Cumberland.      Opinion, March 4, 1941.

252

*McLean, Fogg and Southard,* for plaintiffs.
*Verrill, Hale, Dana & Walker,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

WORSTER, J.   On exceptions. The plaintiffs, attorneys at law, seek to recover of the defendant compensation for legal services

rendered it in connection with the claim for refund of taxes herein-after mentioned.

Objection to the maintenance of the suit having been raised on behalf of the Republic of Nicaragua, on the ground that the defendant was one of its instrumentalities, the action was dismissed in the court below, and the matter is brought here on plaintiffs' exceptions to that ruling.

The defendant is a Maine corporation, organized under the general corporation law of this state, with an authorized capital stock of $3,300,000. It appears from its corporate certificate that, among other purposes, it was organized, stated very briefly, to acquire, construct and exploit any railway or steamship lines within the Republic of Nicaragua, and to perform all acts, operations and contracts in connection therewith, and in order to carry out said purposes, to acquire, own and exploit, in whole or in part, and under any legal title, any concessions, rights and properties which the company may acquire from the Republic of Nicaragua, or from any company, enterprise or individual. The corporation was also authorized to make, issue and sell, pledge or otherwise dispose of promissory notes, bills of exchange, checks, drafts and other evidences of indebtedness, whether secured or unsecured, and to do and enter into all civil and mercantile acts and contracts for the carrying out of the company's purposes, including the issue of mortgage bonds or obligations.

The defendant having paid to the United States taxes amounting to approximately $641,115, employed the plaintiffs to obtain a repayment of said sum by way of refund. Then, as alleged in the plaintiffs' declaration:

". . . it developed that defendant was an instrumentality of the Nicaraguan Government and that that Government owed the United States approximately $484,000, and that the United States would not pay any tax refund in approximately the sum of $641,115 without offsetting the amount owed to it by said government of Nicaragua; that it seemed advisable to plaintiffs to settle on that basis, to wit, have $484,000 debt owed to the United States paid up, plus receiving a cash payment from the United States of the balance of tax refund; that

the plaintiffs negotiated this settlement to the point where the settlement was practically completed when the Nicaraguan Government, unbeknown to the plaintiffs, sent a special agent to the United States to handle the matter and said special agent took up the negotiations where they had been carried by said plaintiffs, and without allowing them to participate in said negotiations, prevailed upon the Department of State to cause the United States Government and the Government of Nicaragua to enter into a treaty under which there would be an offsetting of the two claims, one against the other, and the payment of a cash refund to the Government of Nicaragua in the amount of $72,000, which treaty was executed on April 14, 1938 and pursuant to said treaty the claims were offset and $72,000 was duly paid by the United States; that said settlement, as affected by said treaty, resulted in a money benefit to the defendant of $556,000. . . ."

That some foreign governments own and operate railroads is so well known that we take judicial knowledge of that fact. *Oliver American Trading Co., Inc.* v. *Government of the United States of Mexico et al.*, 5 F. (2d), 659; *Mason* v. *Intercolonial Railway of Canada*, 197 Mass., 349, 83 N. E., 876, 16 L. R. A. (N.S.), 276, 125 Am. St. Rep., 371, 14 Ann. Cas., 574.

And the plaintiffs must be considered as admitting, at the very outset, that, in connection with the claim for refund of taxes, the defendant was an instrumentality of the Republic of Nicaragua, for they allege in their declaration that "it developed that defendant was an instrumentality of the Nicaraguan Government," and they are bound by that allegation. 20 Am. Jur., Evidence, section 630, page 532 *et seq.*

An action cannot be maintained in our courts against a foreign government, or against any of its departmental agencies, through and by which such government discharges its governmental activities, if that government, by proper procedure, objects to the maintenance of the action.

Whether or not a defendant in a given case is such a departmental agency of a foreign government, and whether or not the action is maintainable, can be determined by the court if the issue is therein

raised as a judicial question, only in those cases where the matter has not already been settled as a political question by the executive branch of our government through diplomatic channels.

In the instant case, objection to the maintenance of this action, on the ground that the defendant was an instrumentality of the Republic of Nicaragua, was presented to the court below in three different ways:

(1) By the defendant.

This question, however, cannot be successfully raised by the defendant corporation. *Kunglig Jarnvagsstryelsen* v. *Dexter & Carpenter, Inc.*, 32 F. (2d), 195. Certiorari denied. 50 S. Ct., 32, 280 U. S., 579, 74 Law Ed., 629.

(2) By the duly accredited Minister of the Republic of Nicaragua to the United States, who appeared as a friend of the court and formally stated the Republic's objection to the maintenance of the action on the ground above mentioned, supported by his affidavit that he was authorized so to do.

The right to immunity from suit may be claimed for the foreign government by its accredited and recognized representative, with the sanction of that government. Re Muir, 254 U. S., 522, 41 S. Ct., 185, 65 Law Ed., 383.

(3) By the Assistant United States Attorney for the District of Maine, who appeared as *amicus curiae* by permission of court, and, acting under instructions from the Attorney General of the United States, at the request of the Secretary of State of the United States, represented to the court the position of the Nicaraguan government as made through the diplomatic channels of the Department of State of the United States.

Objection may properly be raised through diplomatic representations "to the end that, if that claim was recognized by the Executive Department of this government, it might be set forth and supported in an appropriate suggestion to the court by the Attorney General, or some law officer acting under his direction." Re Muir, *supra*.

But the plaintiffs contend that there is nothing in the case to show that this claim of the Republic of Nicaragua has ever been recognized and allowed by the executive department of this government. We think otherwise.

The record in the instant case discloses that the Nicaraguan Legation, on behalf of its government, notified the Secretary of State of the United States of the pendency of this action, and requested the Secretary of State to inform the court that

"... the defendant in this action is an instrumentality of the Government of Nicaragua and that the Nicaraguan Government does not consent to the prosecution of this action in the courts of the United States and that in view of these circumstances the Court mentioned should refuse further to entertain prosecution of the action and order it dismissed."

Thereupon, the Secretary of State sent a written communication to the Attorney General of the United States, a copy of which is before us, in which it is stated, among other things, that "in relation to the foregoing the Legation makes the following statements." This was followed by a recital of the facts presented by the Legation, in which appears the following paragraph:

"The defendant corporation was and is, in fact, an instrumentality of the Government of Nicaragua, and has been so recognized by Your Excellency's Government, in connection with the said claim for refund of taxes, and in the treaty itself."

A copy of the claim of the Legation, including the statement just quoted, relating to the recognition by this government, was incorporated by the Secretary of State in the communication sent by him to the Attorney General of the United States, requesting him to "instruct the appropriate United States Attorney to appear before the Court at this hearing and to represent to the Court the position of the Nicaraguan Government as above set forth."

It is apparent that that "position of the Nicaraguan Government as above set forth," which was to be presented to the court at the request of the Secretary of State, was twofold. It was not only claimed by that government that the defendant was and is an instrumentality of the Republic of Nicaragua, but that the defendant has been so recognized by our government "in connection with the said claim for refund of taxes, and in the treaty itself."

Whether or not that statement, relative to the recognition by this government and to the treaty, was true, was peculiarly within the

knowledge of the executive department of our government. If it had been untrue, the Secretary of State would not have permitted such an assertion of fact concerning the alleged conduct of our government in an international affair to be incorporated in his communication, designed to be ultimately presented to the court for action, without denial or explanation. The mere fact that such a statement was incorporated by the Secretary of State in his communication, without any comment whatsoever thereon, must be taken as a tacit assent to the truth of that statement.

And so we conclude that it appears that the executive branch of this government has not only recognized and allowed the claim made by the Republic of Nicaragua, to the effect that this defendant was an instrumentality of that Republic in connection with said claim for refund of taxes, but that that fact had been recognized by our government in a treaty, which is, perhaps, the most solemn form of recognition.

And since this claim of the Republic of Nicaragua has already been recognized and allowed by the executive branch of our government, it would be the duty of the court to grant the immunity prayed for "upon appropriate suggestion by the Attorney General of the United States, or other officer acting under his direction." *Compania Espanola, etc.* v. *The Navemar*, 303 U. S., 68, 58 S. Ct., 432, 82 Law Ed., 667.

But the plaintiffs, relying on the case of *Lamont et al.* v. *Travelers Insurance Company et al.*, 281 N. Y., 362, 24 N. E. (2d), 81, further contend that the action should not have been dismissed because neither the Attorney General of the United States nor the Assistant United States Attorney for the District of Maine suggested a dismissal. It is not necessary that a suggestion of dismissal should have been made by either of them.

The instant case is unlike the *Lamont Case*. In that case, and in *Hannes* v. *Kingdom of Roumania Monopolies Institute* (1940), 20 N. Y. S. (2d), 825, although acting at the suggestion of the Secretary of State, the Attorney for the United States was very careful to present to the court what amounted to nothing more than a mere plea of immunity made by the foreign government, thus raising only an issue of fact to be decided by the court; for, in each of those cases, it was explicitly stated that the matter was presented

"for such consideration as the Court may deem necessary and proper." It is no wonder that the court concluded from that presentation, so carefully and qualifiedly made, that the executive branch of our government had not indicated that it had taken any position as to the foreign government's claim of sovereignty, but had left the issue to be determined by the court on the facts and the law.

In the case at bar, however, no question is raised by the Attorney for the United States for judicial determination. On the contrary, in effect, by way of suggestion, he called the attention of the court to the fact that the executive branch of our government, which is supreme in its own sphere, had already acted in the matter, and that the claim made by the Republic of Nicaragua "through the diplomatic channels of the Department of State of the United States" to the effect that the defendant corporation was and is, in fact, an instrumentality of the government of Nicaragua, had already been recognized by the government of the United States in connection with said claim for refund of taxes, and in the treaty itself.

It having been shown by that suggestion, appropriately made, that the executive branch of government had already acted in the manner aforesaid, it became the duty of the court to dismiss the action for that reason, without proceeding to trial on the issues of fact raised by the suggestion of immunity from suit which had been filed in court in behalf of the Republic of Nicaragua. It had become a political and not a judicial question. The action was properly dismissed. The proper dismissal of the action is not affected by the reason given for the dismissal. *Snell* v. *Libby*, 137 Me., 62, 15 A. (2d), 148; *Helvering* v. *Gowran*, 302 U. S., 238, 58 S. Ct., 154, 82 Law Ed., 224; *J. E. Riley Invest. Co.* v. *Commissioner of Int. Rev.*, 311 U. S., 55, 61 S. Ct., 95, 85 Law Ed., 35.

Since the case was properly dismissed because of the action taken by the executive branch of the government, it follows that the court had no jurisdiction to pass upon the contention of the plaintiffs to the effect that the Republic of Nicaragua had waived its claim of immunity from suit by employing as its instrumentality this defendant, which, under the general corporation laws of this state, may sue and be sued, and so that question is not properly before us. Therefore, the case of *Coale et al* v. *Societe Co-operative Suisse des*

*Charbons, Basle et al.*, 21 F. (2d), 180, and that of *United States* v. *Deutsches Kalisyndikat Gesellschaft et al.*, 31 F. (2d), 199, and similar cases relied on by the plaintiffs, where the claim of immunity from suit was raised by the foreign government as a judicial question to be decided by the court, are not in point.

Plaintiffs take nothing by their exceptions.

The mandate is

*Exceptions overruled.*