Homer L. LOOMIS, Appellant,

v.

William P. ROGERS, Attorney General of the United States, et al., Garnishees, Appellees.

No. 13907.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 15, 1958.

Decided March 6, 1958.

Petition for Rehearing Denied June 16, 1958.

Mr. James C. Toomey, Washington, D. C., with whom Mr. Walter E. Gillcrist, Washington, D. C., was on the brief, for appellant.

Miss Marbeth Miller, Attorney, Department of Justice, for appellees. Messrs. George B. Searls and Irwin A. Seibel, Attorneys, Deparment of Justice,

were on the brief for appellees. Mr. Myron C. Baum, Attorney, Department of Justice, also entered an appearance for appellees.

Before EDGERTON, Chief Judge, and PRETTYMAN and WILBUR K. MILLER, Circuit Judges.

PER CURIAM.

The appellant, Homer L. Loomis, appeals from an order of the United States District Court for the District of Columbia denying the issuance of a writ of attachment against a fund of $151,599.45 on deposit with appellee Priest, the Treasurer of the United States, and vested in appellee Rogers, the Attorney General of the United States, in his capacity as successor to the Alien Property Custodian. The fund represents the proceeds of the sale of a cargo of oil owned by the Italian Navy and sold pursuant to court order in a 1941 forfeiture proceeding against the Italian vessel S. S. Brennero in the United States District Court for the District of New Jersey. The Alien Property Custodian on July 23, 1942, acting under authority of the Trading with the Enemy Act,[1] seized the fund and vested in himself all the interest of the Italian Government therein.

April 10, 1957, the Attorney General published notice of intention to return the fund to the former owner, the Italian Government. The intended return is pursuant to a Joint Resolution of Congress passed August 5, 1947, 61 Stat. 784, authorizing the President to return, in accordance with the procedures set forth in § 32(f) of the Trading with the Enemy Act, vested property which at the time of its vesting was the property of the Italian Government or of Italian nationals.

On the day designated for return of the fund, May 10, 1957, Loomis filed a complaint in the District Court naming as defendants the Italian Government, the Attorney General of the United States and the Treasurer of the United States. The court authorized Loomis to commence the action in forma pauperis. His complaint prayed for judgment against the Italian Government in the amount of $2,530,000 for legal services performed and expenses incurred by him in representing certain Italian vessels and their crews. The complaint also asked that a writ of attachment be issued against the Attorney General and the Treasurer to attach the fund of $151,599.45 before it could be delivered to the returnee. The District Court refused to issue the writ unless Loomis first filed a bond as required by § 16–301 of the D.C.Code (1951) to secure the payment of damages in case of wrongful attachment.

Acting upon motions filed by Loomis, the District Court allowed the Attorney General and the Treasurer to be named as garnishees instead of as defendants, but refused to vacate the earlier order denying attachment without a bond, and refused injunctive relief requested by Loomis to restrain the appellees from returning the fund. The Attorney General, however, voluntarily withheld any action to return the fund during the motion to vacate and for the period necessary to perfect an appeal. This court, by order dated June 7, 1957, stayed the return of the fund pending disposition of this appeal.

Appellant contends that § 32(f) of the Trading with the Enemy Act gives him a right to attach the fund in order that it may be applied in partial satisfaction of his debt claim against the Italian Government. He further claims the District Court erred in requiring a bond as a prerequisite to the issuance of a writ of attachment since that court's authorization to proceed in forma pauperis precluded the necessity of filing a bond; and because there could be no injury to the Italian Government from this attachment, since under § 32(f) that government acquired no right of action to compel the return of the fund by virtue of the notice of intention to return.

1. 50 U.S.C.A.Appendix, §§ 1–40.

We need not reach the question whether Loomis was required to file a bond as a prerequisite to an attachment, for we find the District Court lacks jurisdiction to attach the fund. Section 32(f), under which appellant claims the right to attach, provides for the publication of notice of intention to return at least thirty days prior to the return of vested property to its former owner, and then states:

" * * * After publication of such notice of intention and prior to revocation thereof, the property or interest or proceeds specified shall be subject to attachment at the suit of any citizen or resident of the United States * * * in the same manner as property of the person to whom return is to be made * * *."

The purpose of § 32(f), including the requirement that notice of intention to return be published, is "to permit American creditors to attach property about to be returned before it leaves the country." S.Rep. No. 920, 79th Cong., 2d Sess. 7 (1946). That is, for the purpose of attachment, property about to be returned is treated as property of the returnee for a period of at least thirty days, thus guaranteeing American creditors an opportunity to exercise any right of attachment they may have before the property can be physically removed from the jurisdiction of our courts.

■ In this case, the designated returnee of the fund is the Italian Government. Therefore, under the provisions of § 32(f), the fund, for the purposes of attachment, must be treated as if it were the property of the Italian Government. It is a well-established rule of international law that the public property of a foreign sovereign is immune from legal process without the consent of that sovereign. This immunity is based upon principles of international comity, each sovereign yielding a portion of that absolute territorial jurisdiction which is the attribute of every nation. Berizzi Bros. Co. v. S. S. Pesaro, 1926, 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088; The Exchange v. McFaddon, 1812, 7 Cranch 116, 11 U.S. 116, 3 L.Ed. 287; Guaranty Trust Co. of New York v. United States, 1938, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224; Mason v. Intercolonial Ry., 1908, 197 Mass. 349, 83 N.E. 876, 16 L.R.A., N.S., 276.

■ It follows that, unless the Italian Government has waived its immunity in regard to this fund, the District Court has no jurisdiction to attach it. In Article 79 of the Treaty of Peace with Italy, February 10, 1947, 61 Stat. 1245, 1406, the Government of Italy consented to the seizure, retention and liquidation of its property in the United States by the Government of the United States, and the application of such property or its proceeds to the satisfaction of claims of American nationals against Italy or her nationals. The terms of the treaty thus continued the right, which the United States had been exercising through § 34 of the Trading with the Enemy Act, to apply the proceeds of seized Italian property to the satisfaction of the debt claims of American nationals against the former owners. The treaty did not, however, purport to grant any right of action to American creditors themselves, or to waive any immunity in respect to them. Article 79 also provided for the return to Italy and her nationals of all properties or proceeds thereof remaining after the satisfaction of such claims.

The means chosen by Congress to subject former enemy property vested in the Alien Property Custodian to the satisfaction of debt claims by American creditors against the former owners of the property was the administrative proceeding provided by § 34 of the Trading with the Enemy Act, enacted August 8, 1946. Although § 34(i) states that nothing in § 34 shall bar any person from suing the original debtor in law or in equity, it also provides that the relief and remedy provided by § 34 shall be

"The sole relief and remedy available to any person seeking satisfac-

tion of a debt claim out of any property or interest which shall have been vested in or transferred to the Alien Property Custodian * * * or the proceeds thereof * * *." [2]

Since the Italian Government in the Treaty of Peace did not grant a general waiver of immunity as to its property in the United States, but consented only to the Government of the United States applying such property to the satisfaction of debt claims, and since Congress has provided that the *exclusive* method for application of such property to the satisfaction of debt claims· is the administrative remedy provided by § 34 of the Act, the Italian Government's sovereign immunity still protects its property in any action other than that provided by § 34.

The question remains whether the court will recognize sovereign immunity with respect to this fund where there has been no official suggestion of immunity by the Government of Italy. The requirement that there be a formal suggestion of immunity applies only in those cases where there is a question of fact as to whether the property proceeded against is the public property of a foreign sovereign. In such a case, it is incumbent upon the party calling the jurisdiction of the court into question to establish in an appropriate way the *proof* needed to sustain the challenge. Ex parte Muir, 1921, 254 U.S. 522, 532–533, 41 S.Ct. 185, 65 L.Ed. 383; Berizzi Bros. Co. v. S. S. Pesaro, 271 U.S. at page 570, 46 S.Ct. at page 611; Puente v. Spanish National State, 2 Cir., 1940, 116 F.2d 43. There is no question as to the ownership of the present fund; under § 32(f) it is to be treated as the property of the returnee, the Italian Government, for the purposes of attachment; and the appellant, in his complaint, seeks to attach the fund as property of that government.

The case is remanded to the District Court for dismissal of the attachment proceedings for want of jurisdiction.

Remanded with instructions.

---

2. The time for filing claims under § 34 is limited by subsection (b) thereof to two years from the date of vesting or from the enactment of that section (August 8, 1946), whichever is later. Subsection (a) provides that only· debt claims due and owing at the time of vesting or transfer are to be allowed under § 34.