OPINION OF THE COURT
Edward M. Horey, J.
Central to the motions before the court is the claim of the plaintiff that he was given an exclusive contractual right to sell cigarettes on the lands of the Seneca and that through the interference of the defendants, Hoag, the Seneca Nation and its officers breached the agreement.
The motions before the court are to dismiss the plaintiff’s complaint. One motion is brought by the defendant, Seneca Nation of Indians, and by the 19 officers and councilors of the Seneca Nation. A second motion is brought by the defendants, Robert Hoag and his wife Rosalyn Hoag.
There is no question but what the motions raise not only numerous but novel issues of law. Involved are questions of sovereign immunity of an Indian tribe, sovereign immunity of officers and councilors of an Indian tribe, ultra vires conduct of such officers and councilors, concurrent jurisdiction of the courts of the State of New York and the courts of the Seneca Nation of Indians, the essential pleadings necessary to assert a cause of action of interference with a contract and necessary parties to such an action.
The court considers first the action against the defendant, the Seneca Nation of Indians. That defendant has timely and by action of its duly elected officials raised the defense of sovereign immunity. The basic question raised is whether or not the Supreme Court of the State of New York has jurisdiction over this defendant.
The defense of sovereignty, if applicable, asserts that the absolute power of an independent State is free from the jurisdiction of courts of another State. It postulates that its powers as a sovereign are without accountability. The doctrine is well established in international law. It has been stated that the principles "have long been recognized as applicable to the dealings of all nations” (Mason v Intercolonial Ry., 197 Mass 349, 353, 83 NE 876, 877 [Sup Jud Ct 1908]). It is well recognized in England and in the United States. (See, for example, Mason v Intercolonial Ry., supra, cited also in Hudson, Cases on International Law, at 517 [2d ed].) See also, Mighell v Sultan of Johore ([1894] 1 QB 149, cited in Hudson, *460 Cases on International Law, at 505 [2d ed]) wherein it is stated, "that such a sovereign is entitled to immunity from the jurisdiction of our courts is beyond all question.”
It is of historical and judicial interest to note that the rights of sovereignty of the Indian tribes has been clouded by the manner in which the United States developed.
Discovered by the earlier European colonial powers, the rights of the Indian tribes were not entirely disregarded by the discoverers but such rights were to a considerable extent impaired. Chief Justice Marshall noted this early when he observed of the Indian tribes that "[t]hey were admitted to be the rightful occupants of the soil * * * but their rights to complete sovereignty, as independent nations, were necessarily diminished, and their power to dispose of the soil at their own will, to whomsoever they pleased, was denied by the original fundamental principle, that discovery gave exclusive title to those who made it.” (Johnson v M’Intosh, 8 Wheat [21 US] 543, 574.) As a consequence of the observed historical development the Supreme Court in Johnson v M’Intosh (supra) held that Indian tribes had no power to grant lands to anyone other than the Federal Government. This represented the first judicially determined inroad on the sovereignty of the Indian tribes.
Later in the celebrated case of Cherokee Nation v State of Georgia (5 Pet [30 US] 1, 20 [1831]) the Supreme Court of the United States again speaking through Chief Justice Marshall held that the Cherokee tribe of Indians could not be regarded as a "foreign state” within the meaning of US Constitution article III so as to permit an original action to be brought in the Supreme Court of the United States. However, the opinion recognized the Cherokee tribe to be a "state”, i.e., "a distinct political society, separated from others, capable of managing its own affairs and governing itself’ (supra, p 16). Justice Marshall described the Indian tribes in what has often been quoted as "domestic dependent nations” (supra, p 17).
Shortly later in 1832 in Worcester v State of Georgia (6 Pet [31 US] 515, 558) the Supreme Court again through Chief Justice Marshall stated: "The Indian nations had always been considered as distinct, independent political communities, retaining their original natural rights, as the undisputed possessors of the soil, from time immemorial,. with the single exception of that imposed by irresistible power, which excluded them from intercourse with any other European potentate *461 than the first discoverer of the coast of the particular region claimed”. It was in this most relevant decision that the Supreme Court of the United States held that the laws of the State of Georgia could have no force in Cherokee territory.
It was on the cited decision of Chief Justice Marshall that the view developed that the sovereignty of the Indian nations was limited only in two particulars, viz., the conveyance of land and the ability to deal with foreign powers.
Over the years one major additional exception to the sovereignty of the Indian tribes has developed. It is the intrusion on that sovereignty by the Federal Government. In his very informative text, American Indian Law, Professor William C. Candy, Jr., states (at 82) that "Congress’ power over Indian affairs is plenary and numerous examples exist of Federal statutes limiting the sovereignty of the tribes.” Among other examples cited is the Major Crimes Act (18 USC § 1153) which intruded on a tribe’s traditional power to punish its own members for crime and the Indian Civil Rights Act (25 USC § 1301 et seq.) which imposed some of the restraints of the Bill of Rights on the tribes.
Professor Candy notes sagaciously however that in dealing with the question of Indian tribal sovereignty "the relevant inquiry is whether any limitation exists to prevent the state from acting, not whether any authority exists to permit the tribe to act. As a sovereign, it [an Indian tribe] is free to act unless some federal intrusion has affirmatively modified that sovereignty.” (Candy, American Indian Law, at 67; italics added.) The professor states further that "such sovereignty exists entirely at the sufferance of Congress. Political restraints may, of course keep Congress from greatly diminishing or eliminating tribal sovereignty but legal restraints do not.” (Id., at 72.)
Despite the inroads which have been made on the sovereignty of the Indian tribes by Congress the principle of immunity from suit still remains well established. (See, Santa Clara Pueblo v Martinez, 436 US 49 [1978]; Puyallup Tribe v Washington Game Dept., 433 US 165, 172, wherein it was pointedly stated that '[ajbsent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe”; italics added.)
This court takes judicial notice that the Seneca are a recognized Indian tribe, and notes that no one contests that fact. It has been established in prior litigation both in the *462 courts of the State of New York and the courts of the United States. See, e.g., Matter of Patterson v Council of Seneca Nation (245 NY 433) wherein it was stated: "[t]he conclusion is inescapable that the Seneca tribe remains a separate nation; that its powers of self-government are retained with the sanction of the State * * * [and] that in its capacity of a sovereign nation the Seneca Nation is not subservient to the orders and directions of the courts of New York State”. See also, Seneca Constitutional Rights Org. v George (348 F Supp 51, 56 [WDNY 1972]) wherein it was stated: "[t]he Seneca Nation is a tribe of American Indians which antedates the State of New York. Like other tribes, the Seneca Nation is a quasi-sovereign entity possessing all the inherent rights of sovereignty except where restrictions have been placed thereon by the United States itself.”
The court also takes judicial notice that the Seneca Nation of Indians have never opted to form a tribal corporation under a provision of the Indian Reorganization Act of 1934 (25 USC § 477). That act authorized the Secretary of Interior to issue corporate charters to the Indian tribes. Some of these charters included the power to "sue and be sued”. While the decisions are not uniform it has been held that an Indian tribe operating under such a corporate charter has waived its tribal immunity. (See, for example, Fontenelle v Omaha Tribe, 430 F2d 143 [8th Cir 1970].) Contrary is Boe v Fort Belknap Indian Community (455 F Supp 462 [Mont Dist Ct 1978]) which held that the general tribal immunity was not waived but only the immunity which attended the economic dealings of the tribe.
In the briefs submitted and on oral argument it has been urged that to permit the Seneca Nation to raise the defense of sovereign immunity may result in injustice. It is true that by denying contracting parties the right to seek redress in any court, the Seneca Nation is asserting a powerful and awesome defense. The impact of such defense upon the leases and other contracts entered into by the Seneca Nation would seem to caution the advisability of a contracting party securing a waiver of such defense as a part of any contract. However, the prudence of asserting the defense is an internal matter for the Seneca Nation. It is not the issue before this court. Only its availability and application in the case at bar is to be determined. That determination is that the defense of sovereign immunity, not having been waived by Congress or by the Seneca Nation is as applicable today as it was at the time of Cornplanter, the Seneca’s celebrated revolutionary chief. As a *463 consequence it is held that the Supreme Court of the State of New York is without jurisdiction to proceed as to all causes of action asserted in the instant case against the defendant, Seneca Nation of Indians. The complaint is dismissed as to that defendant.
The court turns next to the defense of sovereign immunity as it has been asserted in behalf of the 19 tribal officers and council members of the Seneca Nation.
It is axiomatic that a sovereign nation may only act through its officers and agents. The court finds it well established that the defense of sovereign immunity may not be evaded by the simple device of suing officers in their individual capacity. This principle of law was well established in Larson v Domestic & Foreign Corp. (337 US 682) in which an attempt was made to sue an officer of the United States. It has been applied to officers of the Indian tribes. (See, Hardin v White Mountain Apache Tribe, 761 F2d 1285 [9th Cir 1985]; Sahmaunt v Horse, 593 F Supp 162 [Okla WD 1984]; Seneca Constitutional Rights Org. v George, 348 F Supp 48 [WDNY 1972]; Kenai Oil & Gas v Department of Interior, 522 F Supp 521 [Utah Dist Ct 1981], affd 671 F2d 383 [10th Cir 1982].)
There are two major exceptions to the general rule and they are (1) that the acts of the officers or agents of the sovereign must have been performed in their official and not individual capacity and (2) that an officer or agent of the sovereign was not acting in a way in which the sovereign had forbidden and thus ultra vires his authority. (Larson v Domestic & Foreign Corp., 337 US 682, 689, supra.) Accord as applicable to an officer or agent of the Indian tribes is Santa Clara Pueblo v Martinez (436 US 49, supra) and Hardin v White Mountain Apache Tribe (761 F2d 1285, 1289, supra).
In the instant action it appears that the plaintiff has sued without exception every officer or council member of the Seneca Nation. In his complaint the plaintiff complains of the actions of these defendants "as officers, directors and counselors of this corporate defendant”. It is clear to this court that the corporate defendant referenced is the Seneca Nation although the reference to that nation as a corporation is inappropriate. The descriptive language employed at least inferentially charges these defendants as having acted in their official capacity albeit allegedly improperly.
The material allegations directed against the 19 officers and council members of the Seneca Nation specifically are set *464 forth in paragraph 11 of the plaintiff’s amended complaint. It alleges that the individually named defendants acted improperly in four specified particulars, to wit: "[they] have exceeded their tribal authority by accepting a percentage of the proceeds of the distribution of cigarettes by the defendants hoag; refusing to enforce the Order of Peacemaker Kenjockety; refusing to enforce the resolution of the Council of the Seneca Nation of Indians; causing, permitting, allowing, aiding, and abetting the Defendants hoag to continue to distribute cigarettes within the boundaries of the Seneca Nation of Indians; and otherwise.”
An analysis of the several allegations discloses that the first allegation of ultra vires conduct on the part of the individual defendants by their accepting a percentage of the proceeds from the distribution of cigarettes by the defendants, Robert Hoag and his wife, Rosalyn Hoag, is without merit. First, there is an absence of any allegation that the moneys received were converted to the use and benefit of the officers collecting the same. The uncontested evidence is that those individual officers and council members who received moneys were acting within their tribal duties to collect revenue from business operations conducted on the lands of the Seneca. It is also uncontested that all moneys collected were turned over by the collecting officers to the treasurer of the Seneca Nation.
As to the second allegation that the individual officers refused to enforce the order of the Peacemaker Kenjockety, there is no evidence that the named officers were ever made a party to any order of the Peacemaker. The copy of the temporary restraining order signed "Donald Kenjockety, Senior Peacemaker”, dated "11-12-85” is directed only to the defendant, Robert Hoag, who was the sole named defendant in the proceeding before Peacemaker Kenjockety. Further, there is no allegation and more importantly no evidence that the Peacemaker Kenjockety ever sought the aid of the individual defendants in enforcing the temporary restraining order or that the enforcement of such an order falls within the official duties of the individual defendants named.
The third allegation charges that the individual defendants "refused to enforce the resolution of the council of the Seneca Nation of Indians”. This allegation is deficient in its lack of specificity. Involved in the litigation are at least two resolutions. The first allegedly giving rights for the sale of cigarettes on the lands of the Seneca to the plaintiff, Maurice A. John; the second allegedly giving rights to the defendant Robert *465 Hoag to sell cigarettes on the lands of the Seneca. Even if the court assumes that the complaint intends to charge the failure of the individual defendants to give exclusivity of rights of sale to the plaintiff Maurice John, that issue is not one for named defendants to give or withhold in their individual capacity. Clearly, it requires action on their part in their official capacity as the duly elected representatives of the Seneca Nation. To whom and on what conditions the right of sale of cigarettes on the lands of the Seneca is without question an internal, legislative determination reserved to the Seneca Nation which acts through its officers and councilmen in their official and not individual capacity.
The fourth and final allegation made against the individual defendants, to wit, that such defendants "aided and abetted the defendant Hoag to continue to distribute cigarettes” suffers from all of the deficiencies noted as to the third allegation, supra, and in addition is wholly conclusory. It is also legally deficient.
In sum the court finds no proof that the individually named defendants acted other than in the capacity of their official duties. Neither does the court find any evidence that such individual defendants acted in any way contrary to their official duties and thus ultra vires. As a consequence, the court holds that the defense of sovereign immunity asserted on behalf of the 19 individually named defendants, officers and councilmen of the Seneca Nation is valid and applicable and this court is without jurisdiction in the premises. Therefore, all causes of action alleged in the plaintiffs complaint are dismissed against defendants Calvin Lay, Lionel John, June Seneca, William Abrams, Pauline R Brown, David Heron, Rodney Pierce, Stuart Redeye, Rae Snyder, Elmer John, Muriel Pierce, Jeff Gill, Lois Green, Gilbert Lay, Dennis Lay, Jerald Jimerson, Ronald John, Karen Keyes and Boyd Snyder.
The court considers finally those allegations in the complaint which are directed against the defendants Robert Hoag and his wife Rosalyn Hoag.
A threshold question is presented as to the defendant Robert Hoag as a consequence of certain proceedings instituted by the plaintiff Maurice John against Robert Hoag in the Peacemakers Court of the Seneca Nation.
The proceedings between the plaintiff and the defendant, Robert Hoag, in the Peacemakers Court were extremely ca *466 sual and brief. For all that appears in the affidavits submitted, the plaintiff made oral contact with one Donald Kenjockety, Senior Peacemaker, and requested that Peacemaker to issue a restraining order. Solely upon this informal request the Peacemaker made the following temporary restraining order:
"Mr. Maurice John P.O. Box 208 Steamburg, NY 14783,
Plaintiff,
-V-
"Mr. Robert Hoag 464 Fair Oak St.
Salamanca, NY 14779,
Defendant.
"TEMPORARY RESTRAINING ORDER
"Mr. Maurice John has registered a complaint with the Peacemakers Court stating that under a contract with the Seneca Nation of Indians he is the sole distributor of the sale of cigarettes through out the Seneca Nation reservations.
"He’s asking this court to refrain you from the sale of cigarettes from the reservations, therefore; it is the Order of this court to refrain you from the sale of cigarettes until such time this matter can be amicably resolved.
"DATE: 11-12-85
"Donald Kenjockety
DONALD KENJOCKETY
SENIOR PEACEMAKER.”
It was determined in Matter of Jimerson v Halftown Estate (22 AD2d 417, 419 [3d Dept 1965]) that the courts of the State of New York have concurrent jurisdiction with the courts of the Seneca Nation. The rule established was that "the court of concurrent jurisdiction 'which first obtains jurisdiction with adequate power to administer full jústice should continue to exercise it.’ ”
To determine whether or not the rule on concurrent jurisdiction decided in Matter of Jimerson (supra) is applicable and thus that this court is without jurisdiction as has been urged requires a review of the effect of the activities of the plaintiff, Maurice John, and of the Peacemaker under the applicable Rules of Procedure of the Peacemakers Court.
*467 Under the Rules of Procedure of the Peacemakers Court it is provided that a temporary restraining order may be issued "on a motion for a preliminary injunction” (italics added). Such order may be issued "without notice” upon a showing "that immediate and irreparable injury, loss or damages will result unless the defendant is restrained before a hearing can be had”. Any temporary restraining order shall "expire by its own terms within such time after entry, not to exceed fifteen (15) days” unless the court extends it or the party against whom the order is directed consents that it be extended for a longer period. (Rules of Procedure of Peacemakers Ct, p 51 (b); italics added.)
Rules of Procedure of the Peacemakers Court article 5 (p 17) deals with the commencement of an action in the Peacemakers Court. Section 5-101 thereof states in relevant part: "a. A civil action is commenced by filing a complaint with the Clerk of the Peacemakers Court and (1) copy of which shall remain in the office of the Clerk of the Seneca Nation, as a permanent record” (italics added).
In her referenced affidavit the Deputy Clerk, Patricia John, makes clear that the referenced rule (i.e., Rules of Procedure of Peacemakers Ct § 5-101) requires the filing of a written complaint to commence an action in the Peacemakers Court. Her affidavit gives sworn evidence that no written complaint was ever filed by the plaintiff Maurice John against the defendant Robert Hoag or any other parties dealing with the sale of cigarettes on the reservation. This statement is made not only in reference to the Peacemakers Court on the Allegany Reservation but also the Cattaraugus Reservation of the Seneca Nation. The statement is accepted as an uncontroverted fact by this court.
Since there is no evidence that a motion for a temporary restraining order must be written, this court concludes that the Peacemaker Kenjockety rightly or wrongly accepted jurisdiction of the oral complaint of the plaintiff, Maurice John, and treated the same at least de facto as a motion for a temporary restraining order against the defendant Robert Hoag. The Peacemaker granted that motion and served a written temporary restraining order against Robert Hoag on November 12, 1985. It is clear, however, that such restraining order terminated automatically under the Rules of the Peacemakers Court 15 days thereafter, since it was not later extended by order of the Peacemakers Court or by consent of the defendant, Robert Hoag.
*468 It is even clearer that the plaintiff Maurice John never opted to commence an action in the Peacemakers Court by filing a written complaint.
Clearest of all is the fact that there was no action pending in the Peacemakers Court between Maurice John and Robert Hoag on December 5, 1985, the date that the action at bar was commenced in this Supreme Court. Nor has any action between those parties been subsequently brought in the Peacemakers Court.
Having opted to pursue his claim against Robert Hoag as well as additional parties, defendant, by instituting an action through filing and serving of a complaint and amended complaint in the State Supreme Court, the plaintiff has properly exercised his option as to judicial forums. It is held that under the rule of concurrent jurisdiction that this court has jurisdiction as to all causes of action asserted by the plaintiff against the defendant Robert Hoag.
Since it is undisputed (1) that the defendant Rosalyn Hoag is a Caucasian and not a member of the Seneca Nation and (2) that no motion or action was ever commenced against her in the Peacemakers Court of the Seneca Nation, this court likewise has jurisdiction as to all causes of action asserted against her by the plaintiff, Maurice John.
There remains for determination by this court the issue of whether the plaintiff’s complaint against Robert Hoag and Rosalyn Hoag can withstand their motion for dismissal.
As this court reads the amended complaint there is really only one cause of action asserted against the defendants Robert and Rosalyn Hoag. It is contained in the first cause of action. In paragraph 10 of the amended complaint it is alleged that "the defendants Hoag have been and are now conspiring with each other and with the other individual defendants to interfere with and/or induce a breach of the aforesaid contract, between the plaintiff, Maurice A. John and the defendant, Seneca Nation of Indians”.
While the plaintiff’s pleading of his first cause of action is less than artful, nonetheless it contains the five essential elements necessary to assert a cause of action for interference with a contract. This is a well-recognized intentional tort. (See, PJI 3:56, and the several cases cited in the comment thereunder.)
"The elements of the tort of interference with contract are (1) existence of a valid contract, (2) defendant’s knowledge of *469 that contract, (3) defendant’s intentional interference with that contract, (4) damages * * * [and] defendant’s act must be without reasonable justification” (2 PJI2d [Feb. 1986 Supplement], at 192; see, Israel v Wood Dolson Co., 1 NY2d 116; Alvord & Swift v Muller Constr. Co., 46 NY2d 276). This court finds that all essential elements have been alleged.
Both in their briefs and oral arguments upon the motion the defendants Hoag have advanced a novel point. First they urge that their conduct is reasonably justified because they assert that the contract between the Seneca Nation and the plaintiff, Maurice John, did not give the plaintiff the exclusive right to sell cigarettes on the reservation. Tacitly they recognize however that such issue is contested and must be determined by trial and not on motion. However, they assert that if this court rules, as it has, that it has no jurisdiction over the Seneca Nation of Indians and the officers and councilors of the Seneca Nation that there will be a void because of the absence of necessary parties to the action.
This court does not accept the argument that the Seneca Nation of Indians and the officers and councilors of the Seneca Nation are necessary parties to the plaintiff’s action against the defendants Robert and Rosalyn Hoag for interference with contract. In truth it has been held that "[a] defendant who has breached the contract involved cannot be held in an interference action by reason of his breach, even though it is alleged that he conspired with others to breach” (id., at 193, citing Associated Coal Sales Corp. v Hughes, 64 AD2d 562, appeal dismissed 46 NY2d 1071, and other cases). Only the tort-feasor who allegedly interfered with the contract is a necessary party defendant. Without doubt the parties to the contract which has allegedly been interfered with will be required to give testimony to resolve the issue of the meaning and intent of the contract upon trial. The difference is between their necessity as witnesses as distinct from parties to the litigation.
For the several reasons stated the determination of this court is that the action at bar will continue only as to the plaintiff’s cause of action for interference of contract and only against the defendants Robert Hoag and Rosalyn Hoag.
Attorney for the Seneca Nation of Indians and the officers and councilors of the Seneca Nation of Indians is to submit order on this decision on notice to the attorney for the plaintiff Maurice John and the attorney for the defendants Robert Hoag and Rosalyn Hoag.